WICKHAM, *qui tam, &c. against* CONKLIN.

An action for *maintenance* will not lie against a person for carrying on a suit in the name of another, or assisting in its prosecution, if he has any legal or equitable interest in the land or subject of controversy.

If the plaintiff seeks to avoid a deed on the ground of an adverse possession, at the time of its execution, such adverse possession must be clearly made out, by positive facts, and not be left to inference or conjecture.

Though a person purchases a *pretended title*, and prosecutes a suit in the name of another, but for his own benefit; yet he is not liable to an action for *maintenance* under the 9th section of the act to punish champerty and maintenance. (Sess. 24. c. 87.)

THIS was a *qui tam* action, for 1,000 dollars, of *debt*, to recover four penalties, of 250 dollars each, on the *act to punish champerty and maintenance*. (Sess. 24. c. 87.)

The declaration contained four counts. The first count stated, that by the act, (sect. 1.) " no officer or other person should (shall) take upon him any business that was (is) or might (may) be in suit in any court, *for to have part of the thing in plea or demand,* and no person, upon any such agreement, should (shall) give up his right to another, and every such conveyance and agreement should be void. And every such person who should (shall) maintain any plea or suit in court, for lands, tenements, or other things, for to have part or profit thereof, should be punished, by fine or imprisonment; but (that) this act should (shall) not prohibit any person to have counsel, of persons duly licensed for that purpose, or to take counsel of his parents or (and) next friends." And " that (sect. 9.) no person should (shall) thereafter *unlawfully maintain, or cause or procure any unlawful maintenance,* in any matter or cause whatsoever, in suit and variance, concerning any lands, tenements or hereditaments, or any goods, chattels, debts, damages, or offences in any court in this state, or before any person who should (shall) have authority to hear or determine respecting the same; and *that* no person should (shall) unlawfully *retain for maintenance of any suit or plea, any person,* or embrace any freeholder or jurors, by re-

wards, promises, or other sinister labour or means, to maintain any matter or cause, or to the hindrance or disturbance of justice, or to the procurement or occasion of any false verdict, in any court within this state, upon pain to forfeit, for every such offence, 250 dollars; the one moiety thereof to the use of the people, and the other moiety to him who will sue for the same, by action of debt," &c. The plaintiff then stated that the defendant, on the 1st of *September*, 1808, *did unlawfully maintain a certain matter or cause* in suit and variance, concerning certain lands situate in *Tully*, in *Onondaga* county, wherein *J. Jackson* was plaintiff, and *Jether Bailey*, defendant, and then was and still is depending in the supreme court, contrary to the act, &c. whereby an action hath accrued, &c.

The second count was like the first.

The third count was like the second, except that the suit was stated to be by *James Jackson* against *Elias Davis*.

The fourth count was like the third.

The cause was tried at the *Orange* circuit, in *September*, 1810, before Mr. Justice *Van Ness*. At the trial, the plaintiff proved, that the writ in this cause was issued the 6th of *June*, 1809, and offered to prove, that on the 12th of *June*, 1806, the defendant and one *Benjamin Herrick*, had taken a deed of a lot in the military tract, knowing that certain persons were then in possession holding adversely. The proof was objected to, but admitted. The plaintiffs then proved, that in *June*, 1806, the defendant and *B. Herrick* asked *Charles A. Tucker* to sell a military lot; that *Tucker* told them he had sold the right, when a minor, and that he gave the deed in 1792, and that he was born the 10th of *August*, 1772. That the defendant and *B. H.* offered him 50 dollars; that they paid him 5 dollars, which he was to retain, in every event, and gave him a bond for the re-

sidue; that the deed was drawn in the name of *William D. Williams*, and that they and *Williams* were jointly interested. The papers mentioned by the witness, though objected to, were read in evidence. The bond was dated *June* 12, 1806, for 45 dollars, and conditioned to be good, if the defendant and *B. Herrick* obtained the lot granted to *John Tucker*, a soldier, (brother to *Charles A. Tucker*.) The other *writing*, which they gave to *C. A. Tucker* was of the same date, and certified that they were to be at all the expense in procuring the lot.

The *deed*, which was of the same date, and for the consideration of love and affection, and also of 300 dollars, contained a covenant only, that *C. A. Tucker* was heir to *John Tucker*. It was further proved, that the defendant and *B. H.* said, at the time, that there was some person on the lot, and that there would be a great deal of trouble about it. *C. A. Tucker*, in the summer of 1808, executed a deed of the lot to the plaintiff, who gave him 100 dollars, and an indemnity against former deeds.

The plaintiffs then gave in evidence a patent of lot No. 14. in *Sempronius*, granted to *John Tucker*, and offered in evidence a declaration in ejectment in this court by *James Jackson*, ex dem. *John Tucker, Charles A. Tucker, William D. Williams and others* v. *Elias Davis*. Another declaration of *James Jackson*, on the demise of the same lessors, against *Jether Bailey*, both of which were of *November* term, 1806.

The plaintiff further proved, that *William Wickham* (father of the plaintiff) was attorney for *Bailey* and *Davis*, in the ejectment suits, in 1807 and 1808; and that the suits were noticed for trial, at the *September* circuit, in 1808, in *Onondaga*. That the causes were called on for trial, by the judge at the circuit; that *Bailey* and *Davis* were in possession in 1808, and claimed to be owners under the plaintiff.

The counsel for the defendant moved for a nonsuit, on the following grounds: 1. Because the plaintiff had

ALBANY,
August, 1811.

WICKHAM
v.
CONKLIN.

proved *champerty*, and not maintenance; 2. That the defendant appeared to be an equitable owner with *Herrick* and *Williams;* and it was not *maintenance* to prosecute an action in the name of *Williams*, his trustee; 3. That there was no evidence that *Bailey* and *Davis* held under colour of title. The motion for a nonsuit was overruled by the judge.

The defendant proved, that in *July* or *August*, 1808, *Jeremiah Conklin* went, at the request of *B. Herrick*, to *Charles A. Tucker*, for a warrant of attorney to prosecute the ejectment suit; that *Tucker* told him he had never sold his right, until he sold it to *W. D. Williams*, and said he did not know where the land lay, nor of any person in possession; that *Tucker* refused to give a power of attorney, and said he had given a deed to the plaintiff. The defendant proved that *Herrick*, *Williams* and himself, were jointly interested in the land, and prosecuted the ejectment suits, at their joint expense.

The judge charged the jury, that it was a material point, whether at the time the defendant and *Herrick* made the contract with *Tucker*, there was any person in possession of the land claiming adversely, and whether the defendant knew it; that it was proved that *Bailey* and *Davis* were in possession, and had cleared a part, and that the jury might, from circumstances, presume they held adversely, under colour of title, though no deed was shown under which they held, and that the defendant knew it; that there were several circumstances to show that defendant knew he was buying a lawsuit; that the prosecution of a suit by *Conklin* and others, for their own benefit, was lawful, and the deed was good; but that as *Charles A. Tucker* was a lessor, it was maintenance if the land was held, at the time, adversely; that he thought the proof strong and conclusive, and recommended a verdict for the plaintiff. The jury found a verdict for the plaintiff, for 500 dollars.

A motion was made to set aside the verdict and for a new trial; 1. Because improper evidence was admitted; 2. Because the plaintiff ought to have been nonsuited at the trial; 3. For the misdirection of the judge.

*Ruggles*, for the defendant. 1. There is a variance in the declaration from the statute, in using the word " should," instead of *shall;* and in reciting the 9th section, the word " that" is introduced, where it is not to be found in the section. When a person undertakes to set forth a public act, the least misrecital is fatal.*

*\* Doug. 94. 97.
1 Ld. Raym:381.
7 Term Rep.771.
Chitty Pl. 217, 218.*

2. The action is brought on the 9th section of the act *to recover* the penalty; but the verdict is founded on the 8th section, which is against the buying and selling of *pretended titles*, and the offender forfeits the value of the land. The 9th section prohibits *maintenance*, and gives the penalty of 250 dollars, for every offence. If, therefore, the plaintiff cannot bring this case within the *ninth* section, he cannot recover. This section is copied from the *English* statute, and the decisions of the *English* courts are in point.

*Maintenance* is defined to be an officious intermeddling in a suit that does not belong to one, by maintaining or assisting either party with money, or otherwise, to prosecute or defend it.† There is a great difference between *purchasing a pretended title*, and *maintenance*. If the party buys a pretended title, he forfeits the value of the land. If he upholds the suit of another, he forfeits 250 dollars. As the plaintiff sues for the penalty of 250 dollars, the offence charged, if any, must be *maintenance*. In an action for maintenance, the plaintiff must show that a plea was pending,‡ and the defendant may plead *nul tiel record.*§

*† 4 Bl. Comm. 134. Hawk. P. C. b. 1. c. 83. s,1. 12.*

*‡ Savil, 41, 42.
§ Hawk. b. 1. c. 85. s. 42.*

Again, it is stated in the declaration to have been an action by *James Jackson* v. *Jether Bailey;* but it is not stated for what precise thing the suit was brought. *Jackson* is a fictitious person, and the lessors are not named.

The description of the suit is insufficient; and the plaintiff, on that ground, ought to have been nonsuited. As to the purchase of the pretended title, it was more than a year before the commencement of this suit, and will not, therefore, support an action.

<div style="float:right">

ALBANY,
August, 1811.

WICKHAM
v.
CONKLIN.

</div>

3. The evidence of adverse possession was not sufficient. To render a deed void on this ground, there should be clear and satisfactory evidence of an adverse possession at the time. A person who has an interest in land, certain or contingent, legal or equitable, may lawfully uphold another in an action concerning such lands.* To constitute the offence of *maintenance*, there must be an intermeddling by the party in a suit where he has no concern or interest in the subject matter of controversy. The suits in the present case, were certainly for the interest and benefit of the defendant.

> * *Hawk. P. C.* b. 1. c. 83. s. 17, 18. 21, 22. 2 *Roll. Abr.* 115. 117, 118 *Bac. Abr. Maint.*(B)

Again, how can an action for *maintenance* be supported while the suit, the bringing of which is alleged to be maintenance, is still pending? How can the court say, but that the plaintiff in that suit may recover, and so establish the title of the present defendant?

*J. Duer* and *Bunner*, contra. 1. Using the word *should*, instead of *shall*, or the *past*, instead of the *present* tense, cannot be a fatal variance, in reciting a statute. In *Boyce* v. *Whitaker*,† the statute was so recited; but no objection was made on that account. In *King* v. *Hall*,‡ which was a conviction on an information, the court said, that it was better to state it in the time *past*, than in the *present* tense.§ In *Patridge* v. *Strange*,¶ the act is recited in the same manner. The rule laid down by Lord *Mansfield*, in *Boyce* v. *Whitaker*, that in reciting an act of parliament, the party was to be held to half a letter, is unreasonable, and contrary to former decisions. The true rule is laid down in *Ventris*,** that

> † *Doug.* 94.
>
> ‡ 1 *Term Rep.* 320.
>
> § 1 *Saund.* 262. ¶ *Plowd.* 78.
>
> ** 2 *Vent.* 215. 2 *Bulst.* 47.

ALBANY,
August, 1811.

WICKHAM
v.
CONKLIN.

* *Cro. Car.* 136.
† *Cro. Eliz.* 307.
‡ 6 *Term Rep.*
771.

§*Hawk.* b. 1. c.
83. s. 4. 1 *Inst.*
368. b. 369. a.

¶ 1 *Johns. Rep.*
163.

** *Cited* 5 *Johns.*
*Rep.* 500.

where the recital answers the *sense* of the statute, it is sufficient.

In *Say and Seale* v. *Stephens*,* the court held that a misrecital, to be fatal, must be in the *substantial* part of the act. And for *or*, has been held not to be a fatal variance.† It is true, in *King* v. *Marsack*,‡ it was held otherwise, but on the ground that the variance, in that case, changed the *sense* of the statute.

But the plaintiff does not profess to set out the statute *verbatim*, but only the substance of it.

2. This action is not brought against the defendant for purchasing a pretended title, but for *maintenance*. The evidence, as to the pretended title, was introduced to show that the plaintiff had no title, legal or equitable.

The statute creates no new offence; it merely superadds a penalty. The offence mentioned in the first section is properly *champerty*, a species of *maintenance*. Our act is not borrowed from any one *English* statute, but is taken from several statutes. The 1st section is from 1 *West.* c. 5. and the 9th section from 32 *Hen.* VIII. c. 69.

We must look to the common law for a definition of *maintenance*. It is where one person assists another with money to carry on a cause.§ The evidence shows that the defendant purchased the title with a view to the suit; and it is manifest he was aware, at the time, of an adverse claim.

3. Then, had the defendant any interest in the land which could justify him in upholding the suit? There can be no doubt, from the evidence, that the purchase was of a pretended title. An adverse possession is where the person in possession claims title, and the declarations of the tenant are admissible evidence.¶ If there was an adverse possession, the deed was absolutely void; for where the law declares a thing unlawful, if done, it avoids it when done. It was so decided by this court in *Jackson*, ex dem. *Jones*, v. *Brinckerhoff*,** which was recognised in *Williams* v. *Jackson*.

It is said that the suit was for the benefit and interest of the defendant. But the prosecution of a suit, after the purchase of a pretended title, though for the benefit of the purchaser, is maintenance. It was so decided in *Flower's* case, which is precisely in point.* The same objection which has been made here, was made in that case; but the court of *starchamber* held it to be *maintenance*.

<div style="float:right">
ALBANY,<br>
August, 1811.<br>
WICKHAM<br>
v.<br>
CONKLIN.<br><br>
* *Hob.* 115.<br>
*Moore,* 761.<br>
*Nov,* 52.
</div>

There could be no *trust* in this case, for if the purchase was illegal and void, it could raise no trust or interest for the defendant. If there was any agreement between the defendant and *Williams*, as to the suit, it was *champerty*.

*Per Curiam.* The ground of the action consists in the charge of unlawful maintenance, in carrying on the ejectment suits. But if the defendant had any interest, legal or equitable, in the land, which was the object of the suits, there was no foundation for the charge of maintenance. (2 *Roll. Abr.* 115. g. 117. *Hawk.* tit. *Maintenance*, s. 12, 13. 17, 18.) The defendant and *Herrick* purchased of *Charles A. Tucker*, his interest, as heir to his brother *John*, in the military bounty lands, and took a deed, regularly drawn and executed, and paid 5 dollars down, and gave a bond for 45 dollars, to be paid, on condition that the title, so granted, prevailed. This deed was taken in the name of *W. D. Williams*, but on their joint account. The defendant had then an equitable interest in the land, and if any interest passed, *Williams* took it as trustee for the joint concern. This deed was given in *June*, 1806, and it was valid and operative, unless the land to which it related was held at the time adversely. It was incumbent upon the plaintiff to make out this fact affirmatively and clearly, if he meant to destroy the operation of the deed on that ground. There is certainly no sufficient evidence of the existence of that fact at the date of the deed. There is no evidence that

*Bailey* and *Davis* were on the land as early as *June*, 1806. They were, afterwards, in possession, and held under the plaintiff; but the plaintiff's deed from *Tucker* was as late as 1808, and he did not show any other source of title. There were some loose sayings, that some person was on the land when the deed was taken, but who it was, or under what claim or title, did not appear. It will not do to declare a deed void, upon such light and equivocal testimony of adverse possession. The adverse possession ought to have been made out, by positive facts, and not by mere inference or conjecture.

If the deed of *June*, 1806, was not absolutely void, then the charge of maintenance falls to the ground, and the plaintiff ought to have been nonsuited, in pursuance of the motion made at the circuit.

But if the deed did not operate, by reason of the adverse possession, yet the testimony does not make out the crime of maintenance, in the strict legal sense. The defendant did not officially intermeddle in the prosecution of another's right, but he was undoubtedly prosecuting this suit for his own benefit. He may have purchased a pretended title, *scienter*, so as to have subjected himself to the penalty given in the 8th section of the statute, but that is not the offence charged. Maintenance, strictly speaking, is the assisting another person in a lawsuit, without having any privity or concern in the subject. There can be no doubt that the defendant was using the name of *Tucker*, as a mere nominal lessor, not for the benefit of *Tucker*, but as a trustee for his own benefit, and that of the other persons connected with him in the purchase. In no view of the case, then, does the charge appear to be made out; and, without attending to other objections which were made upon the argument, there must be judgment of nonsuit entered, according to a stipulation in the case.

Judgment of nonsuit.