(8 App. Div. 219)

PEOPLE ex rel. MILLARD et al. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department. July 7, 1896.)

TAXATION—CANCELING TAX SALE—RIGHT OF OWNER.

The rule that only the purchaser, and not the owner, of land sold for taxes, can, under Laws 1893. c. 711, apply to the comptroller to have the sale canceled (People v. Roberts, 39 N. E. 85, 144 N. Y. 234), applies where the state was the purchaser at tax sale.

Certiorari by John H. Millard and George N. Ostrander to review the determination of James A. Roberts, as comptroller of the state of New York, in refusing to cancel on the application of relators a tax sale claimed by them to be invalid. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Stedman, Thompson & Andrews, for relators.

T. E. Hancock, Atty. Gen., for defendant.

PARKER, P. J. Section 85, c. 427, Laws 1855, gives authority to the comptroller, whenever he shall discover that a sale made for taxes under that act is invalid, to cancel such sale, and refund out of the state treasury, to the purchaser, etc., the purchase money and interest thereon. No provision is made by the statute as to who may make the proofs of invalidity, and apply to him for cancellation. It has, however, been decided that under that section the owner is not given any right to make such an application. People v. Chapin, 104 N. Y. 369, 5 N. E. 64, and 11 N. E. 383. Subsequently, chapter 448, Laws 1885, amended section 65 of the act of 1855, by adding to it a provision that all conveyances and certificates, and the tax sales on which they are based, shall be subject to cancellation on a direct application to the comptroller, or an action brought before a competent court therefor, by reason of the legal payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid. Such act did not amend or affect the eighty-fifth section of the act of 1855, above referred to. It is manifest that the relators, in the matter before us, can claim nothing from this provision of the act of 1885, because

they do not claim that the tax has been paid, or that it was illegally assessed. Moreover, the case above cited holds, under this act, that the owner acquired no right to make such an application. By chapter 217, Laws 1891, the act of 1885 is amended, and it is therein provided that:

"All applications heretofore or hereafter made to the comptroller for the cancellation of any tax sale, by any person interested in the event thereof shall be heard and determined by him, and his determination shall be subject to review by certiorari or otherwise."

Under this provision it has been again held that the comptroller has no jurisdiction to entertain and act upon the application by the owner for the cancellation of a tax sale. People v. Wemple, 139 N. Y. 240, 34 N. E. 883. Subsequently, by chapter 711, Laws 1893, a general act was passed "in relation to the sale and redemption of lands sold for taxes," and most of the act of 1855, including section 85, above referred to, was repealed. In place thereof, by section 20, it was, among other things, provided:

"If he [the comptroller] shall not discover that the sale was invalid until after a conveyance of the lands sold shall have been executed, he shall, on application of any person having any interest therein at the time of the sale, on receiving proof thereof, cancel the sale, and refund out of the state treasury to the purchaser, his representatives or assigns, the purchase money and interest thereon," etc.

Under this act it has still been held that the owner of the lands sold has no right to apply to the comptroller for a cancellation of the sale; that it is to the purchaser only that such right is given. People v. Roberts, 144 N. Y. 234, 39 N. E. 85. It is claimed by the relators in this matter that these decisions do not apply to a case where the state has become the purchaser at the tax sale; that they are based upon the principle that, the purchaser having an interest to sustain the sale, and no provision being made for bringing him before the comptroller to defend against the owner's claim that it is invalid, the comptroller should not, in such cases, entertain an application to cancel the sale; but that in a case where the state itself is the purchaser, and is, therefore, before the comptroller, and in a position to defend against the owner's claim, the reason of the rule ceases, and hence the rule itself has no application. The cases above cited decide that it was not the purpose of any of the above-quoted statutes to clothe the comptroller with authority to decide as between the owner and the purchaser upon the validity of a tax sale; that it was not intended by them to create a new tribunal, where such question could be litigated and decided; and that the absence of any provision for bringing any party, except the applicant, before the comptroller, was evidence that no such purpose was intended. They hold that the plain and only purpose of such acts was to provide a means by which a purchaser, who had paid his money to the state for a title which proved to be defective, and of no value to him, could recover it back. The state, for the purpose of doing simple justice to a purchaser who had paid it money for a conveyance based upon an invalid sale, authorized the comptroller, upon discovering that fact, to cancel the sale, and restore the money. With that single purpose in view, it is

plain that no one need be before the comptroller but the purchaser, and with such a purpose the provisions of the statute are consistent. For the purpose of adjudicating upon conflicting claims between owner and purchaser, the provisions are utterly inconsistent and insufficient.　Whatever proceedings are taken to cancel the sale as between the purchaser and the state, and whatever decision may be made in the matter, they cannot in any way prejudice or affect the interests of the owner.　If the sale was illegal and invalid, his title was not divested, and he could at any time maintain and secure his rights thereto by the proper action in the courts of the state. Johnson v. Elwood, 53 N. Y. 431; Thompson v. Burhans, 61 N. Y. 52–67.　But the purchaser who has paid his money for an invalid title looks only to the justice of the state for relief, and the statutes in question are the method by which the state has arranged to do him that justice.　Therefore the court concluded that the comptroller, under those statutes, acquired no authority to inquire or decide as to the validity of a tax sale, except upon the application of a purchaser, and for the purpose of doing justice to him.　No such inquiry was intended, or was at all necessary, to protect the rights of the owner.　If the statutes have invested the comptroller with authority to entertain the application only when made by the purchaser,—if the sole purpose of the inquiry is to do justice to him,—I cannot see how they can be extended, even though the state be the purchaser. They are not so elastic as to confer jurisdiction upon him to act in some instances upon the application of the owner and in other instances not; and I cannot believe that it was the intention of the court to so decide in the case of People v. Turner, 145 N. Y. 451, 40 N. E. 400. It is true that at page 459, 145 N. Y., and page 400, 40 N. E., the judge who wrote the opinion has used language which indicates that such a distinction might be made.　But it is not the statement of a proposition decided, nor was it one necessary to the decision of the case; and, in view of the persistency with which that court has held, even under the provisions of the act of 1893, that the statutes confer no right whatever upon the owner (People v. Roberts, above cited), I am of the opinion that the distinction which the relators here seek to make cannot be sustained.　I conclude that there are no provisions of law giving to the owner, under the circumstances here shown, the right to apply to the comptroller to cancel a tax sale.　If he is unlawfully injured by such a sale, he must seek his relief in the courts.

The decision of the comptroller is therefore affirmed, with $50 costs.　All concur.