SARANAC LAND & TIMBER CO. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department.    March 19, 1908.)

1. TAXATION—TAX TITLE—ACTION TO TRY—EVIDENCE.

Evidence examined, and *held* sufficient to support the finding of a ref-eree that the trustees of a school district levied a tax on property with-out the district.

2. SAME—ASSESSMENT—NOTICE.

Laws 1864, p. 1259, c. 555, tit. 7, § 66, as amended by Laws 1865, p. 1340, c. 647, required trustees of school districts in making out a tax list to apportion the tax on certain specified property and on all unoccupied real estate lying within the district boundaries, owned by nonresidents, and liable to taxation for town or county purposes. Sections 67, 68, pp. 1259, 1260, provided that the valuation should be ascertained if possible from the last assessment roll of the town, etc., but if the valuation could not be so ascertained, the trustees should ascertain the value from the best evi-dence accessible, giving notice to the persons interested. · Section 74, p. 1261, required the trustees when making out a tax list to insert a descrip-tion of every piece of land owned by nonresidents with the same value af-fixed to it in the last assessment roll of the town, and if it was not separately valued in that roll, then it should be valued proportionately to the valuation given therein of the whole tract of which it was a part. *Held* that, where the town assessment roll described in one body a tract lying only partly within a certain school district, and the trustees, in-stead of ascertaining the value of the part within the district, copied into

the tax list the whole entry from the town assessment roll, it will not be presumed for the purpose of conferring jurisdiction on the trustees that they gave the owner notice, which, under the procedure they adopted, was not required by the statute.

3. SAME—TAX SALE—TAXES PART VOID AND PART VALID—RIGHTS OF OWNER.
When the state sells lands for unpaid taxes levied at different times, some of which are valid and others invalid, the title of one against whom the sale is made is not thereby divested.

4. LIMITATION OF ACTIONS—NATURE—NECESSITY OF TRIBUNAL TO DECIDE CLAIM.
Unless there is a tribunal of some kind before which a claimant may assert his rights, a statute of limitations does not conclude his claim.

5. TAXATION—SALE—REDEMPTION.
The provision of Laws 1885, p. 758, c. 448, relating to the collection of taxes on lands of nonresidents, and providing for the sale of the land for unpaid taxes, that though conveyances should, six months after the act took effect, be conclusive that the sale and all proceedings prior thereto were regular, they should be subject to cancellation on direct application to the Comptroller, is not applicable to the owner of the land.

6. WOODS AND FORESTS—FOREST COMMISSION—TITLE TO LAND.
Laws 1885, p. 482, c. 283, providing that all lands owned or afterwards acquired by the state in certain counties shall constitute the forest preserve, and giving the Forest Commission the care of them, only assumed to vest in the Commission control over such lands as the state actually owned, and the Commission has no control over land claimed by the state under a void tax sale, and a judgment against them for exercising any such control would not bind the state.

7. TAXATION—SALE FOR TAXES—REDEMPTION.
Laws 1855, p. 781, c. 427, as amended by Laws 1885, p. 763, c. 453, § 93, provides that after the advertisement for a certain time of wild, vacant, or forest lands, to which the state holds title, the land shall be deemed to be in the actual possession of the Comptroller of the State, whose possession shall continue until he has been dispossessed by the judgment of a competent tribunal. *Held*, that the purpose of the section was to provide a method whereby the question of title might be tested, and to furnish a defendant against whom an action might be brought for that purpose, and hence an action could be brought thereunder by the owner to recover such land sold to the state at a void tax sale.

8. CHAMPERTY—GRANTS OF LAND HELD ADVERSELY.
Under Code Civ. Proc. § 1501, providing that an action to recover real property may be brought by a grantee in the name of the grantor, where the conveyance under which he claims is void because the property was held adversely to the grantor, a champertous grantee may maintain ejectment in the name of the grantor.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Champerty and Maintenance, § 63.]

9. SAME.
A strict construction of a statute is justified as against the defense of champerty which is a technical and unmeritorious defense relating solely to the form and not the substance of the action.

10. SAME—"CHAMPERTOUS GRANT."
To render a grant "champertous" within Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 147, providing that every grant of land shall be absolutely void if at the time of the delivery thereof the land shall be in the actual possession of a person claiming under a title adverse to that of the grantor, the "actual possession" required by the statute must be shown by plain and unequivocal proof.

11. SAME—"ACTUAL POSSESSION."
Evidence of the collecting of money for a trespass, preventing other trespasses, and posting fire notices on a tract of 3,500 acres of wild forest

land, where the amount of money collected, the circumstances of the several trespasses, and the extent of the notice posting does not appear, is insufficient to establish "actual possession" thereof, within Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 147, making void grants of land which are in actual possession of a person claiming a title adverse to the grantor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Champerty and Maintenance, § 70.

For other definitions, see Words and Phrases, vol. 1, pp. 165–167; vol. 8, p. 7565.]

**12. SAME.**

The execution of two leases of five acres each for camping purposes out of a tract of 3,500 acres of forest lands to persons who had occupied the property prior to the leases apparently under the owner's grantors, and who only occupied it at intervals, and did not cultivate or fence it, where neither the plaintiff nor its predecessor in title appeared to have knowledge of any fact tending to establish adverse possession in another, even if it constituted actual possession of the leased portions was not "actual possession" of the rest of the tract within Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 147, making void grants of lands which are in actual possession of a person claiming a title adverse to the grantor, but the grantor being in possession of the greater portion of the tract, his grant of the entire tract was valid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Champerty and Maintenance, § 67.]

**13. SAME.**

A deed of lands held adversely is good as against persons not in legal privity with an adverse possessor, and hence in an action against the State Comptroller to recover forest lands, claimed to be held adversely by the Forest Commission at the time of plaintiff's grant, his grant is good as against the Comptroller.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Champerty and Maintenance, § 65.]

**14. SAME—STATUTES—CONSTRUCTION—"PERSON."**

The Champerty Act, Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 147, provides that every grant of land shall be absolutely void if at the time of the delivery thereof such land shall be in the actual possession of a "person" claiming under a title adverse to that of the grantor. The Statutory Construction Law, Laws 1892, p. 1485, c. 677, § 5, provides that the term "person" includes a corporation and a joint-stock association, and, when used to designate a person whose property may be the subject of any offense, may include the state. *Held*, that the state is not a "person" within the champerty act.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

Kellogg, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by the Saranac Land & Timber Co. against James A. Roberts, as Comptroller of the State of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

William S. Jackson, Atty. Gen., and John H. Burke, special counsel, for appellant.

Weeds, Smith & Conway (Frank E. Smith, of counsel), for respondent.

COCHRANE, J. This is an action of ejectment to recover the possession of 3,750 acres of land in the town of Harrietstown, Franklin county, and being the westerly half of the northeast quarter of what is known as "Township 24, great lot 1, Macomb's Purchase." The land is situated in the Adirondack wilderness, and is wild, vacant, forest land. Plaintiff has established title to said land good as against the defendant except for three tax sales made by the State Comptroller in the years 1877, 1881, and 1885, for the nonpayment of taxes on lands of nonresidents under which sales the state claims to have acquired title to such land. The plaintiff challenges the validity of these tax sales, and claims that they were illegal and insufficient to convey title to the state. Such tax sales included the whole of the northeast quarter of township 24 consisting of 7,500 acres except 400 acres thereof. The easterly half thereof except said 400 acres was subsequently redeemed, and the present controversy is confined to the westerly half of said quarter. The tax assessments, however, and the proceedings leading up to and including the tax sales included the entire quarter consisting of 7,500 acres less said 400 acres. The learned referee specifies in his report many defects and omissions which he concludes were sufficient to invalidate the sales. But one will be here considered, inasmuch as it is sufficient for the disposition of this appeal. It is not to be inferred from our failure to discuss the other propositions considered by the referee that we either approve or disapprove his conclusions in reference thereto.

The sale of 1877 was made by the Comptroller for the satisfaction of unpaid state, county, town, and highway taxes for the years 1866 to 1870, both inclusive, and for school taxes for the years 1869 and 1870. These taxes with interest and costs amounted in the aggregate to $1,652.78. In 1870 school district No. 2 in the town of Harrietstown included so much of the northeast quarter of township 24 as was within a circle the circumference of which was three miles from the schoolhouse located easterly of the township and in the county of Essex. Approximately one-third of the northeast quarter of said township and one-half of the west half of said quarter was outside said circle and not within said school district. The trustees of the district in making out a tax list in the year 1870 included therein as nonresident land the entire northeast quarter of said township except said 400 acres, and imposed a tax upon the whole thereof amounting to $9.45. This tax was returned as uncollected, and eventually entered into the amount of of unpaid taxes for which the sale of 1877 was made by the Comptroller to the state.

The appellant questions the fact that the school district was limited to a three-mile circle from the schoolhouse. Chapter 480, p. 684, of the Laws of 1847, § 8, required town superintendents of common schools to describe and number school districts and deliver such description and number to the town clerk; and section 85 authorized the taxation in such districts of nonresident land within three miles from the schoolhouse. . Chapter 179, p. 285, of the Laws of 1856, abolished the office of town commissioners, and devolved their duties on school commissioners, and chapter 456, p. 782, of the Laws of 1860, requir-

ed such school commissioners to ascertain whether school district lines were definitely and plainly described in the book of records kept in the town clerk's office for that purpose, and, if not, to cause the same to be correctly and definitely described and recorded in said book. There was produced on the trial the town register or record book of the town of Harrietstown containing records and proceedings from the years 1848 to 1879. Such book was submitted by consent on the argument to us, and is before us for our inspection. On page 107 thereof there is what purports to be a record of the boundaries of school district No. 2 in the town of Harrietstown, which limits the territory of said district to a three-mile circle from the schoolhouse. There are certain crudities and informalities not only in connection with this particular record, but with many others contained in this book, not unusual in proceedings of local officers uneducated in the law. But the authenticity of the record scarcely admits of doubt. There is an apparent discrepancy in the date thereof which seems to be October 5, 1868, whereas the records on the pages immediately before and after are those of the year 1862. But it appears in its regular order as of a record for the year 1862 without mutilation of the book, and that the record was entered therein in regular order scarcely admits of doubt. Whether made in the year 1862 or 1868 is wholly immaterial for the purposes of this question, and the referee was quite justified in declining to ignore the record because of an apparent but immaterial discrepancy in date. The fact that in the year 1870, but subsequently to the imposition of this tax, the district was reconstituted so as to include the entire northeast quarter of the town constitutes no argument adverse to the finding of the referee as to the boundaries of the district prior thereto. Had there been any change in the boundaries of the district between the years 1862 and 1870 the record of such fact would naturally and properly appear in said book of records. The finding of the referee that the trustees of this district levied a tax on property without the district is amply sustained by the evidence.

That a sale based on a tax thus levied, assuming such to be the fact, would be void is not seriously questioned by the appellant. Such tax, however, constitutes a small proportion of the entire amount of unpaid taxes, for which the sale in question was made, and we are asked to overlook this feature of the case on the principle de minimis lex non curat. The difficulty with the application of that principle is that the question is not merely one of an irregularity, but is jurisdictional, and lies at the very foundation of the proceedings under which the state claims title. This tax was clearly without jurisdiction and void, for the reason that the trustees assumed to tax land not within their district and without notice to the owner. Section 66, tit. 7, c. 555, p. 1259, of the Laws of 1864, entitled "An act to revise and consolidate the general acts relating to public instruction," as amended by chapter 647, p. 1340, of the Laws of 1865, required the trustees of school districts in making out a tax list to apportion the same on certain specified property, and on all unoccupied real estate lying within the boundaries of the district, the owners of which should be nonresidents, and which should

be liable to taxation for town or county purposes. Sections 67, 68, tit. 7, c. 555, pp. 1259, 1260, of the said act of 1864, were as follows:

"Sec. 67. The valuations of taxable property shall be ascertained, so far as possible, from the last assessment roll of the town, after revision by the assessors; and no person shall be entitled to any reduction in the valuation of such property, as so ascertained, unless he shall give notice of his claim to such reduction to the trustees of the district before the tax list shall be made out.

"Sec. 68. Where such reduction shall be duly claimed, and where the valuation of taxable property cannot be ascertained from the last assessment roll of the town, the trustees shall ascertain the true value of the property to be taxed from the best evidence in their power, giving notice to the persons interested, and proceeding in the same manner as the town assessors are required by law to proceed in the valuation of taxable property."

Section 74, tit. 7, c. 555, p. 1261, of the said act of 1864, was in part as follows:

"The trustees of any district at the time of making out any tax list * * * shall make and insert in such tax list a statement and description of every such lot, piece or parcel of land so owned by nonresidents therein * * * and the value of such lot or piece of land shall be set down opposite such description which value shall be the same that was affixed to such lot or piece of land in the last assessment roll of the town; and if the same was not separately valued in such roll then it shall be valued in proportion to the valuation which was affixed in the said assessment roll to the whole tract of which such lot or piece shall be part."

It appears that the last assessment roll of the town of Harrietstown prior to the school tax list in question described in one body the entire northeasterly quarter of township 24 excepting the 400 acres and fixed a valuation for the same and gave no valuation for any subdivided portion thereof. Inasmuch as it was not possible for the trustees to ascertain from the assessment roll the valuation of that portion of the property in question which was within their district they should, under said sections 68 and 74 above referred to, have ascertained its value otherwise, and given notice to the owner. Instead of doing so, they erroneously copied into their tax list the entry from the assessment roll both as to the property and its valuation, and thereby levied the tax on some of the property in question beyond the boundaries of their district. Where a valuation was taken from an assessment roll, no notice was contemplated by the statute, and none was necessary, because in such case the owner had received due notice from the town assessors, and hence we must assume that this valuation in question so taken from the assessment roll was made by the trustees without notice. No statute is called to our attention, and we know of none except as above stated, which provided for any kind of notice where the valuation was ascertained otherwise than from the assessment roll of the town. In Jewell v. Van Steenburgh, 58 N. Y. 85, the identical provisions above quoted for the assessment of property by school district trustees were under consideration, and it was held that the omission to give notice as therein required was a jurisdictional defect invalidating the tax and rendering the trustees liable as trespassers. In The People v. Turner, 117 N. Y. 234, 22 N. E. 1022, 15 Am. St. Rep. 498, it was also held that an omission to give notice "is a jurisdictional defect, which, in a proceeding between the owner and any one claiming a right in such

property under a tax sale, renders such sale irregular and void." In Jewell v. Van Steenburgh, supra, it was also held that there was no presumption that the trustees had given the requisite notice, but that the facts conferring jurisdiction must be affirmatively proved by the trustees. Perhaps this last-mentioned principle to its full extent would not apply to the present case, but inasmuch as no notice was necessary or required when a valuation was ascertained from the assessment roll we cannot assume, for the purpose of conferring jurisdiction on the trustees, that they gave a notice not required or contemplated in the procedure which they adopted. It cannot be doubted that if the tax sale of 1877 by the Comptroller had been made solely for this particular tax no title would pass by a conveyance thereunder.

It is settled that when the state sells lands for unpaid taxes levied at different times, some of which are valid and others invalid, the title of one against whom the sale is made is not thereby divested. By mingling good and bad together the state cannot give a valid title to the property thus assessed. Nehasane Park Association v. Lloyd, 167 N. Y. 437, 60 N. E. 741; The People v. Hagadorn, 104 N. Y. 516, 10 N. E. 891; Poth v. The Mayor, etc., of New York, 151 N. Y. 16, 45 N. E. 372. All of these unpaid taxes now under consideration were blended together in one sum, and the property was sold and bid in by the Comptroller for an aggregate amount without reference to the various items constituting the same. The subsequent tax sales of 1881 and 1885 added nothing to the title which the state acquired by the sale in 1877. Section 5, c. 402, p. 547, of the Laws of 1881, amending section 66 of the Tax Law of 1855, p. 794, c. 427 required the Comptroller to bid off all lands then belonging to the state, and to reject any other bids which might be made therefor. Apparently acting under that statute the property at the sales in 1881 and 1885 was treated as already belonging to the state, and as the referee has found was bid off for the state without an opportunity for competition. See Meigs v. Roberts, 42 App. Div. 291, 299, 59 N. Y. Supp. 215. Hence the state has never acquired title to the land in question.

The appellant contends that this action is barred by the statute of limitations. This contention involves a consideration of chapters 283, 448, 453, pp. 482, 758, 761, of the Laws of 1885, the two latter of which amended chapter 427, p. 781, of the Laws of 1855, entitled "An act in relation to the collection of taxes on lands of nonresidents, and to provide for the sale of such land for unpaid taxes." Said chapter 448, p. 758, of the Laws of 1885, provided, so far as applicable to this action, that conveyances executed by the Comptroller should, six months after the act took effect, "be conclusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served" and further provided as follows:

"All such conveyances and certificates and the taxes and tax sales on which they are based, shall be subject to cancellation, as now provided by law on a direct application to the Comptroller or an action brought before a competent court therefor by reason of the legal payment of such taxes or by

reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid."

The appellant contends that the action was barred under this statute six months after it became effective. The answer of the respondent to such contention is that, until there was a person or entity against whom or which it or its predecessors in title could maintain an appropriate action, said statute did not and could not operate to limit the time within which such action might be instituted. By said chapter 453, p. 763, of the Laws of 1885, there was added to chapter 427, p. 781, of the Laws of 1855, a new section 93, as follows:

"From and after the advertisement, once a week for three successive weeks, of a list of wild, vacant or forest lands, to which the state holds title from a tax sale or otherwise, in one or more newspapers to be selected by the Comptroller, published in the county in which such lands may be located, all of such wild, vacant or forest lands shall be deemed, and are hereby declared to be, in the actual possession of the Comptroller of this state; and such possession shall be deemed to continue until he has been dispossessed by the judgment of a competent tribunal."

The respondent contends that until the advertisement thus provided for occurred there was no opportunity for the institution of an action or proceeding to test the question of title to said lands. Such advertisement was commenced in December, 1894, and within six months thereafter this action was begun. It is undoubtedly established law that, unless there is a tribunal of some kind before which a claimant may assert his rights, a statute of limitations does not conclude his claim. Parmenter v. The State of New York, 135 N. Y. 154, 3 N. E. 1035; Sanford v. Sanford, 62 N. Y. 553; City of Buffalo v. The State of New York, 116 App. Div. 539, 101 N. Y. Supp. 595. This leads us to a consideration of the question as to what, if any, remedy was open to the plaintiff or its predecessors in title before the advertisement by the Comptroller in December, 1894.

The remedy provided by chapter 448 of the Laws of 1885 for a direct application to the Comptroller for a cancellation of conveyances and sales is not available to an owner whose property has been sold. The People ex rel. Wright v. Chapin, 104 N. Y. 369, 5 N. E. 64, 11 N. E. 383; The People ex rel. Millard v. Roberts, 8 App. Div. 219, 40 N. Y. Supp. 457, affirmed 151 N. Y. 540, 45 N. E. 941; The People ex rel. Witte v. Roberts, 144 N. Y. 234, 39 N. E. 85. The appellant places much reliance on the cases of The People v. Turner, 117 N. Y. 227, 22 N. E. 1022, 15 Am. St. Rep. 498, and The People v. Turner, 145 N. Y. 451, 40 N. E. 400. Those cases are clearly distinguishable from the present case so far as the school tax above discussed is concerned. The point of the decisions in those cases was that the owner had not been deprived of his day in court. Although the town assessors had failed to give him the required notice the statute provided him a remedy by appeal to the board of supervisors where his grievance might have been redressed. It was held that the owner had not been deprived of his property without due process of law or an opportunity to protect and maintain his rights. He had neglected to avail himself of such an opportunity open to him by statute, and hence was concluded by another statute

as the result of his own laches. In the present case, as we have already sought to demonstrate, the owner has never had an opportunity to protest against the school tax or to defend himself against the imposition thereof, or to question or attack the same. So far as the Turner Cases assumed to decide that the owner might have availed himself of an application to the Comptroller for a cancellation of the sale under chapter 448 of the Laws of 1885, they must be deemed to have been overruled by the subsequent case of The People ex rel. Millard v. Roberts, 151 N. Y. 540, 45 N. E. 941.

The learned counsel for the appellant further suggests that the action might have been maintained against the Forest Commission established by said chapter 283, p. 482, of the Laws of 1885. That act declared as follows: "All the lands now owned or which may hereafter be acquired by the state of New York" within certain counties, including Franklin, "shall constitute and be known as the forest preserve"; and the Forest Commission was given the care, custody, control, and superintendence of and charged with certain duties in reference thereto. It is self-evident that, if we are right in our conclusion that the state never acquired title to the land in question, such land never became a part of the forest preserve, and the Forest Commission was given, by force of the statute, no powers or duties in reference thereto. The statute only assumed to vest in the Commission control over such lands as the state actually owned. If the forest Commission exercised control or authority over the land in question, such acts were not the acts of the state nor the acts of the Commissioners in their official capacity, but their individual, unauthorized, and unlawful acts not performed within the sphere of their duties as Forest Commissioners. Litchfield v. Pond, 186 N. Y. 66, 78 N. E. 719. This proposition will receive further consideration in discussing the defense of champerty herein. There are, it is true, enunciations in different opinions by the Court of Appeals to the effect that the Forest Commission is in the actual possession of lands in the forest preserve, but those statements presuppose the fact that the state had acquired title to such lands. Even if an action might have been maintained against the Forest Commission, a judgment obtained therein would not have been binding on the state. Peck v. The State of New York, 137 N. Y. 372, 33 N. E. 317, 33 Am. St. Rep. 738; Sanders v. Saxton, 182 N. Y. 477, 480, 481, 75 N. E. 477, 12 L. R. A. (N. S.) 727, 108 Am. St. Rep. 826.

In Corkings v. The State of New York, 99 N. Y. 499, 2 N. E. 458, 3 N. E. 660, it was said:

"When the state, to a just claim, such as this is found to be, has no better or other defense than the statute of limitations, it should at least, both upon the law and the facts, establish that defense with reasonable clearness and certainty."

That the state itself could not be made a party to any action or proceeding wherein the question could be litigated is conceded, and there seems therefore to have been no method open to the plaintiff or its predecessors in title to institute such litigation until the Comptroller, by the advertisement alluded to, made the present action possible. That

such an action is properly brought against the Comptroller under said chapter 453, p. 761, of the Laws of 1885, which places him in possession of lands by virtue of the statutory advertisement, was decided in the case of Meigs v. Roberts, 42 App. Div. 290, 59 N. Y. Supp. 215. That case was reversed (162 N. Y. 371, 56 N. E.. 838, 76 Am. St. Rep. 322); but such reversal was on·points other than those on which the case has been cited in this opinion. It is said that the same reasoning might be applied to this act as to the act creating the Forest Commission, and that if under the latter act the commission is not in possession of lands not owned, but only claimed by the state, neither is the Comptroller in possession of such lands under the former act. There is no analogy between the two statutes. In their purposes and scope they are as widely divergent as the antipodes. The very purpose and the only purpose of the act placing the Comptroller in possession as pointed out by Presiding Justice Parker in the case last above cited was to provide a method whereby the question of title might be tested, and to furnish a defendant against whom an action might be brought.

It is further urged by the appellant that the conveyance to the respondent was champertous. The statute relied on which was in force at the time of such conveyance (Rev. St. pt. 2, c. 1, tit. 2, § 147) was that "every grant of land shall be absolutely void if at the time of the delivery thereof such land shall be in the actual possession of a person claiming under a title adverse to that of the grantor." The claim is made that the Forest Commission was in "actual possession" of the property, claiming under a title adverse to that of plaintiff's grantor. The Commissioners as individuals made no claim of title, and hence to make the defense of champerty available under the statute above quoted the defendant is driven to the contention that the Forest Commission as an official body and in its official capacity was in actual possession. It is doubtful whether this defense has been properly pleaded. Possession by the Forest Commission is not alleged in the answer. The specific allegation of the answer is that the lands were "in the actual possession of the people of the state of New York," claiming under an adverse title. "Actual possession" under such claim is the gist of this defense. It is conceded that the people of the state did not have actual possession, and it seems reasonably clear that under an allegation of actual possession by one person a defendant cannot succeed by proving actual possession by another. Particularly is this so in a defense of this character which is one of form rather than of substance. Under section 1501 of the Code of Civil Procedure a champertous grantee may maintain ejectment in the name of the grantor. Ten Eyck v. Witbeck, 55 App. Div. 165, 66 N. Y. Supp. 921. Hence, had the defense of actual possession by the Forest Commission now relied on been pleaded, plaintiff might have instituted the action in the name of another plaintiff.

Waiving the question of pleading, however, there can be little doubt that as against this defense of champerty the Forest Commission was not in possession of this property by virtue of the act creating the Commission. That act (chapter 283, p. 482, of the Laws of 1885), as above pointed out by its express terms, vested in the Commission control over

such lands only as the state actually "owned" or "acquired," and as the state never acquired ownership of the lands in question this Commission as an official body could acquire no possession thereof, whatever the individual liability of the Commissioners may have been. It is said, however, that this construction of the statute is too narrow, and that the Commission must be deemed to be in actual possession, even though, as in this case, it has concededly trespassed on private property, provided only the state makes a claim of title. If it be true that our construction is narrow, such construction is nevertheless amply justified as against the defense of champerty by the highest authorities. That defense is technical, unmeritorious, and has been regarded with growing disfavor by courts and legislatures in England and this country for more than 100 years. It is a remnant of an English product in an age when the custom obtained of assigning causes of action to nobles or men of wealth or influence, with a view to oppressing possessors and perverting justice by overawing the courts. An interesting résumé of the origin, reasons, and history of the champerty law is contained in Thallhimer v. Brinckerhoff, 3 Cow. 644, 15 Am. Dec. 308, and also in Sedgwick v. Stanton, 14 N. Y. 289. In the former case it was said:

"The English judges feeling that the original reasons for the law of champerty and maintenance have ceased have gradually mitigated that law by interpretations and exceptions."

In the latter case it was said:

"The good sense of that rule seems to me to be very questionable and in early as well as modern times it has been so explained away that it remains at most only an objection to the form of the action in any case."

In Crary v. Goodman, 22 N. Y. 177, it is said:

"No reason exists for giving to the champerty act a liberal or enlarged construction; it is the relic of an ancient policy which has been treated with but little favor by either Legislatures or courts in modern times, and should not necessarily receive a construction which would make it a serious obstacle in the way of the transfer of undisputed titles and of the settlement of wild and uncultivated lands."

In Bissing v. Smith, 85 Hun, 570, 33 N. Y. Supp. 127, it is said:

"It is not the policy of the law in this country to give this rule of the common law embraced in the champerty statute a construction and effect more liberal than its terms necessarily require."

In Ten Eyck v. Witbeck, 55 App. Div. 167, 66 N. Y. Supp. 923, this defense is likened to "a plea in abatement, as the right of the plaintiffs would not be determined." It has been repeatedly held that the defense is not available as against a deed given by the state (Brady v. Begun, 36 Barb. 533; Candee v. Haywood, 34 Barb. 349; Jackson v. Gumaer, 2 Cow. 552, 568); or as against a sheriff's deed or a deed given pursuant to a judicial sale, or to curative deeds (Abbott's Cyclopedic Digest, vol. 3, p. 144); or to a conveyance of an equity of redemption (Stoddard v. Whiting, 46 N. Y. 627, 634); and it might be urged with much plausibility that such defense by a sovereign state is not within the spirit of the statute. Neither the English crown nor the state of New York is or ever was in danger of oppresssion by a powerful suitor.

The attitude of our Legislature in reference to the statute is clearly disclosed by said section 1501 of the Code of Civil Procedure which deprives it of its force and kills its substance by permitting the action to be maintained by the grantee in the name of the grantor. The defense relates solely to the form, and not to the substance of the action. It is not intended in what has been said to minimize or belittle the actual importance of the statute in a case which fairly falls within its terms and spirit. Even though there is no good ground under present conditions, and in the present state of society for the statute, the mere fact of its existence requires its observance and enforcement in a case to which it is fairly applicable according to its spirit. But it is very clear that we should not be astute to so construe the act creating the Forest Commission and defining the powers and duties of that Commission as to create a defense of champerty unless we are required to do so by the phraseology of the act, and neither the language or spirit of that act nor the spirit of the champerty act makes such construction necessary.

But this construction of the statute is not narrow. On the contrary, the construction contended for in behalf of the appellant as applied to the present situation would be strained and unnatural, and can only be accomplished by reading something into the statute not therein contained. It is of course inconceivable that the Legislature intended to vest the Commission with possession of any lands not owned by the state. And it is illogical to attempt to guage the status of this Commission—an artificial body which lives and acts solely at the behest of the statute by the ordinary standards applicable to the contractual relationships between man and man. Whatever possession the Commission has comes from the provisions of the statute. Its powers and duties are limited and circumscribed thereby. Its relation to the state claiming title is not analogous to that of one individual claiming title under another individual by force of some contract or alleged contract. It may be that for certain purposes and to carry out the beneficial scheme of the statute and in its practical operations the Commission should be deemed to be in possession of lands claimed, but not owned, by the state; but it by no means follows that the Commission should be so deemed in possession for the purpose of making available the defense of champerty, and no court has ever so intimated. That defense is subject to a strict construction of statutes.

But there is a further objection to this defense. The facts proved do not establish as matter of law actual possession within the meaning of the champerty law. The actual possession required by that statute to avoid a grant must be shown by plain and unequivocal proof. Wickham v. Conklin, 8 Johns. 220; Jackson v. Sharp, 9 Johns. 163, 6 Am. Dec. 267; Jackson v. Waters, 12 Johns. 365; Howard v. Howard, 17 Barb. 663. An employé of the Forest Commission testified that on one occasion he collected money for a trespass and on other occasions prevented other trespasses. How much money was collected or what the circumstances of the several trespasses were do not appear. It would seem that the credibility of this witness by reason of his relationship to the defense as an employé of the state was a

proper question for the consideration of the referee. Fire notices are claimed to have been posted, but it does not appear when, where, or to what extent, and it further appears that it was the custom of the Commission to post individual lands as well as state lands. Col. Fox, the superintendent of the Commission, testified:

"We put them everywhere whether it was state land or not."

Doubtless the foresters of the Commission traveled over this land, as they also did over other forest lands, whether belonging to the state or individuals. Taxes were paid by the state. Aside from the question of leases hereafter mentioned, these are all the facts occuring in a period of over 9 years on an area of 3,500 acres of wild, forest land on which it is sought to predicate the conclusion of actual possession so far as to base thereon the defense of champerty. But it is argued, not very convincingly, that these acts were all which the Commission was required to do under the statute. That may be conceded, but it will scarcely be contended that less evidence is required under the champerty act to establish actual possession by the Commission than would be required to establish such possession by an individual.

In Marsh v. Nehasane Park Association, 18 Misc. Rep. 314, 321, 42 N. Y. Supp. 996, it appeared that some of the lands had been surveyed, taxes paid, notices posted, and watchers employed to keep off trespassers. The court said:

"These acts do not in my opinion constitute 'an actual possession' of these wild lands such as was contemplated by the Legislature as necessary to avoid a deed."

This case was reversed, but on other grounds. 25 App. Div. 34, 49 N. Y. Supp. 384.

In the case of The Mission of the Immaculate Virgin v. Cronin, 143 N. Y. 524, 38 N. E. 964, the court said:

"This was uninclosed, uncultivated, unimproved, and unoccupied land. ' The plaintiff and its predecessors had exercised some acts of apparent ownership upon the land. They had claimed title to the land, surveyed it, marked the boundaries thereof by monuments, from time to time cut trees upon it, and for a few years paid the taxes thereon. All these acts. as we have frequently held, fall short of showing adverse possession as defined in the Code."

In Thompson v. Burhans, 79 N. Y. 93, 99, it was said of wild, mountainous, forest land:

"Payment of taxes, surveying, and assertion of right do not constitute possession. They merely show a claim of title, and, whenever it is important to show that, they are material. Going upon land from time to time and cutting logs thereon does not give possession."

In Wheeler v. Spinola, 54 N. Y. 377, the headnote is as follows:

"The entry upon land once a year for over twenty years, and the cutting and removal of grass therefrom by a party who has not inclosed or cultivated it, and, where it is no part of a known farm or lot occupied by him, is not sufficient to confer a title by adverse possession."

The foregoing cases from the Court of Appeals were all cases where title was sought to be acquired by adverse possession. A fortiori, the

same facts would not constitute actual possession under the champerty act.

It further appears, however, that in August, 1893, the Commission executed two leases each covering five acres for camping purposes. The deed to plaintiff was executed in December, 1894. A third lease of five acres was executed a few days prior to plaintiff's deed, but no rent was paid thereon until after said deed. The lessees in each instance had occupied the property prior to the leases. So far as appears, such prior occupancy was under the plaintiff's grantors. It certainly does not appear that it was under the Forest Commission. One cottage was built on these leased sites, but it does not appear to have been built prior to plaintiff's deed. There was no difference in the occupancy by reason of the leases. The lessees occupied the property at occasional intervals as they had done prior to the leases. There was no permanent residence or domicile on any part of this land. None of it was improved or cultivated or fenced. It does not appear that the plaintiff's grantors had any knowledge of these leases or of any of the acts of the Commission. In its final analysis the question of these leases amounted simply to the collection of rents by the Commission from people who were and had been accustomed at intervals to camp on insignificant portions of this tract of land. It would not seem that the collection of rent under such circumstances was an act of more significance than would be the payment of taxes or the cutting and removal of timber which was held in the cases above cited to be insufficient to create a possession.

In The People ex rel. Marsh v. Campbell, 143 N. Y. 335, 38 N. E. 300, it was claimed that there was an occupant within the meaning of the statute requiring notice of redemption under a tax sale to any person in the "actual occupancy" of the property. The court said:

"The decision of the General Term, that the occupancy by Dunning of a loghouse located on an island in the eighth lake of the Fulton chain as a hunting camp, at irregular intervals, and without any use of the mainland, except to roam over it in pursuit of game, did not constitute actual occupancy under the statute, meets with our approval."

In Jackson v. Myers, 3 Johns. 388, 3 Am. Dec. 504, it was held by Chief Justice Kent, in the language of the headnote:

"The payment of taxes, and the execution of partition deeds, are not evidence of an actual possession, though they may show a 'claim of title.'"

But conceding, for the sake of the argument, that there was an actual possession of these leased portions such possession would be limited to the 10 acres, and would not extend to the main tract. In Thompson v. Burhans, 61 N. Y. 68, it was said:

"The balance of the whole township was not and could not be used in connection with the cleared portion for any purpose appertaining thereto. The farthest that any case has gone which has come under my notice is to hold that where a person claims title under a deed, and thus has color of title to a farm or a lot of proper size to be possessed for a farm, or to be managed or used in a body, according to the custom and business of the country in which it is situated, and is in possession of a portion of the same, then he is constructively in possession of the whole. This rule has never been applied to a tract of land containing thousands of acres. If it would apply to a case like this, then it would apply to a tract of 100,000 acres claimed under a deed giv-

ing mere color of title of which the claimant was the actual possessor of but one acre in the remotest corner thereof."

Now, if we assume that these two leases gave the Forest Commission actual possession of the 10 acres covered thereby, must we hold that there was a twofold cause of action, and that as to those 10 acres this action may not be maintained? The answer to this question may be found in Danziger v. Boyd, 120 N. Y. 628, 24 N. E. 482, as follows:

"To extend this statute so as to embrace a grant of land, the greater part of which was in the possession of the grantor at the delivery of the grant, and establish, as a rule, that grantees must, under such circumstances, recover part of the land by an action in the name of his grantor (Chamberlain v. Taylor, 92 N. Y. 348), and the remainder by a suit in his own name, would perpetuate a common-law rule which has no existence in the law of this state except as it is contained in our statute."

There is no evidence that plaintiff or its predecessors in title had any knowledge of any fact which can be claimed to establish actual possession in another. The leases under the circumstances here appearing did not operate to create any visible or discernible change in occupancy, nor did they in fact effect any change in the manner of use or enjoyment of the property. Grant that the payment of taxes by others and certain other facts must have been known to plaintiff's grantors, such facts constitute proof of claim of title merely which is one essential element of this defense. But actual possession means more. It also means more than constructive possession. It may be assumed that the Forest Commission claimed title, but there was not a single act brought to the attention of plaintiff's grantors which would indicate that this property was in fact being used or enjoyed in hostility to their ownership, nor would ordinary observation of the property or attention thereto necessarily disclose such use or enjoyment. It would seem that actual possession if it means anything means no less than this. In any event, how can it be claimed that such actual possession has been established by the plain and convincing proof required according to the authorities heretofore cited to avoid a grant under the champerty law? And a fortiori it certainly cannot be claimed that this plaintiff was chargeable with knowledge of such actual possession by another. To hold that, under such circuumstances, it must be deprived of its property is a somewhat startling proposition. If, under the facts here appearing, this defense can succeed, there is little safety in many real estate purchases. In Bissing v. Smith, 85 Hun, 570, 33 N. Y. Supp. 123, it was held that the question of actual possession under this statute is usually a question of fact. The burden of establishing this fact was of course on the defendant, and, unless we are prepared to hold that such fact was conclusively established as matter of law in favor of defendant, the finding of the referee on this point is decisive as against him.

It may be further urged as against this defense that there was no privity of relationship between the Forest Commission and the State Comptroller. The relation of each to the land is created by different statutes. The Comptroller did not derive title from the Forest Commission, nor did the latter derive title from the Comptroller. Each is entirely independent of the other. A deed of lands held adversely is good as against persons not standing in legal privity with him who

holds adversely. Howard v. Howard, 17 Barb. 665; Poor v. Horton, 15 Barb. 497; Livingston v. Proseus, 2 Hill, 526. The headnote in the case last cited is as follows:

"A deed of land held adversely to the grantor is utterly void as against the person thus holding, and others afterwards coming in under him; but in respect to all the rest of the world, it is operative, and passes the grantor's title."

Thus far we have considered this defense of champerty without reference to the statutory construction law (Laws of 1892, p. 1485, c. 667). Were there otherwise any doubt on the subject, such doubt would be dispelled by section 5 of that law which is as follows:

"The term person includes a corporation and a joint-stock association. When used to designate a party whose property may be the subject of any offense, the term person also includes the state, or any other state, government or country which may lawfully own property in the state."

The prohibition of the champerty act is by its terms against a conveyance of land possessed by a "person" claiming under an adverse title. The word "person," as above defined in section 5 of the statutory construction law, does not include the Forest Commission. Nor does it include the state, except when its property is the subject of an offense, and as in the nature of things there is no occasion for the defense of champerty, and it is inapplicable except when the land is not the property of the one invoking the defense, it follows that the state is not a "person," within the meaning of the champerty law, who can have the benefit thereof. The authorities heretofore cited as to the foundation of that law and as to the strictness with which it should be construed fully justify us in giving to the word "person" therein contained the meaning given it in the statutory construction law.

The discussion leads us to concur in the conclusion of the referee, and the judgment entered on his report should therefore be affirmed, with costs. All concur, except KELLOGG, J., who dissents.