(42 App. Div. 290.)

## MEIGS v. ROBERTS.

(Supreme Court, Appellate Division, Third Department. July 6, 1899.)

1. EJECTMENT AGAINST STATE—FOREST LANDS.
    Laws 1893, c. 711, § 13, providing that after the advertisement for three weeks of a list of vacant, wild, or forest lands, to which the state holds title from a tax sale or otherwise, in one or more papers, to be selected by the comptroller, published in the county in which such lands may be located, all of such lands shall be deemed to be in the actual possession of the comptroller, and that such possession shall continue until he has been dispossessed by the judgment of a competent tribunal, sanctions the bringing of ejectment against the comptroller to recover possession of lands in the forest preserve so in his possession.

2. SAME—PARTIES.
    The action is properly brought against the comptroller as such, rather than against the forest commission, which has the control of all lands in the forest preserve.

3. TAXATION—FOREST LANDS—SALE—TRANSFER TO STATE.

Laws 1855, c. 427, § 48, provided that, where a tax purchaser fails to pay. his bid, the comptroller may sell the tax certificate, or transfer it to the state. Section 49 fixed the rights of the new purchaser, the same as those of the bidder. The owner was given the right to redeem within two years, and section 61 provided for a notice by the comptroller, to be published in each county, within six months before the expiration of the two years, of the lands therein sold for taxes and unredeemed, and the amount necessary to redeem them, and stating that they would be conveyed to the purchaser unless redeemed by a specified day. Laws 1878, c. 152, as amended by Laws 1881, c. 402, § 3, amended Laws 1855, c. 427, § 48, by providing that where the state becomes the purchaser by such transfer the whole land liable to sale for the purchase money mentioned in such certificate shall be covered by such purchase, just as if no one had offered to bid at the sale. A 585-acre tract of land was offered for sale for taxes, and 100 acres of it sold for the full amount of the taxes, and a certificate of sale for 100 acres issued to the purchaser. While the certificate of sale was still outstanding, the comptroller published the notice of redemption; stating that 100 acres had been sold for the taxes, and that unless it was redeemed it would be conveyed to the purchaser on a certain day. Afterwards the purchaser's certificate was canceled by the comptroller for failure to pay the bid in full, and the state took an assignment of the certificate, and claims to be the purchaser of the 585 acres by reason of section 48 as amended. *Held* that, since the transfer to the state was made after the notice of redemption was given. it is, in effect, as if no notice of redemption whatever had been given, and the state obtains no title.

4. SAME—STATUTES—CURING JURISDICTIONAL DEFECTS.

Laws 1885, c. 448, providing that tax deeds issued by the comptroller, after having been recorded for two years, and all outstanding certificates of a tax sale by the comptroller that shall have remained in force for two years after the last day allowed to redeem therefrom, shall be conclusive evidence that the sale and all notices required by law to be given previous to the expiration of the period of redemption were regular, and were regularly given, published and served, does not cure jurisdictional defects in the proceedings.

5. SAME—WHAT ARE JURISDICTIONAL DEFECTS.

The appropriation by the state of the whole tract assessed, on the tax purchaser failing to pay his bid, where only a part of it had been sold to such purchaser for delinquent taxes, after a notice to the owner that only a part thereof had been sold, and was redeemable in a certain time, was a jurisdictional defect.

6. SAME—TAX TITLES.

An appropriation of lands by the state, without sale, to satisfy the taxes against them, cannot, in itself, add anything to the title under the conveyance on which the appropriation is based.

7. CHAMPERTY—LAND IN ACTUAL POSSESSION OF ANOTHER.

A purchase of forest lands not in the actual possession of any one, except in so far as Act 1885, § 93, puts the actual possession in the state comptroller after advertisement, where the state holds title from a tax sale or otherwise, is not champertous, at any event, where before the advertisement.

8. SAME—LANDS IN LITIGATION.

The application to the comptroller to cancel a tax sale is not a suit pending in court, within Pen. Code, § 129, so as to make a sale of the lands in the interim champertous.

9. SAME—POSSESSION OF GRANTOR.

Pen. Code, § 130, making it a misdemeanor to sell a title to land unless the grantor has been in possession or has taken the rents or profits thereof for a year before the covenant to convey was made, does not apply where the title of the grantor comes directly from the state, and from him to his grantee.

Merwin, J., dissenting.

Appeal from special term, Franklin county.

Ejectment by Ferris J. Meigs against James A. Roberts, as comptroller of the state of New York. From a judgment dismissing the complaint (54 N. Y. Supp. 214), plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

John P. Badger, for appellant.

J. C. Davies, Atty. Gen. (Theodore E. Hancock, of counsel), for respondent.

PARKER, P. J. The action is ejectment to recover from the defendant the possession of about 585⅔ acres of land. Such land is wild and uncultivated, situated in Franklin county, within the limits of the forest preserve; and it is claimed that the defendant, as comptroller of the state, is in the actual possession thereof, and that this action may be maintained against him by reason of the provisions of section 13 of chapter 711 of the Laws of 1893. The comptroller had, under the provisions of that section, advertised such lands as lands to which the state holds title, and this action is evidently brought to determine the validity of such claim. The trial judge, after taking all the evidence offered by both sides upon the issues presented, dismissed the complaint upon the ground that the action was one against the state, and therefore could not be maintained, and from the judgment entered on such decision this appeal is taken.

The provisions of the above section were first enacted in section 4 of chapter 453 of the Laws of 1885. The phraseology of that section, which is not substantially changed by the one above cited, was as follows:

"Sec. 93. From and after the advertisement, once a week for three successive weeks, of a list of wild, vacant or forest lands, to which the state holds title from a tax sale or otherwise, in one or more newspapers to be selected by the comptroller, published in the county in which such lands may be located, all of such wild, vacant or forest lands shall be deemed, and are hereby declared to be, in the actual possession of the comptroller of this state; and such possession shall be deemed to continue until he has been dispossessed by the judgment of a competent tribunal."

At that session of the legislature two other acts were passed which have some bearing upon the question here presented,—one, the act creating the forest commission, being chapter 283, Laws 1885; and the other being chapter 448 of such Laws, which amends section 65 of the general act regulating the collection of taxes, to wit, chapter 427 of the Laws of 1855. The owners of lands which had been previously sold for taxes in this large tract of wilderness were in many instances claiming that the taxation and proceedings thereunder had been irregular and without authority, and that the conveyances which the state had given under such proceedings were therefore void, and frequent applications had been made by the owners to the comptroller to vacate such sales and the conveyances given thereon. The courts had held that such a remedy was not open to the owner, and that he must establish his title, as against the one given upon the tax sale, by his action of ejectment in the courts of the state. People v. Chapin, 104

N. Y. 369, 5 N. E. 64, and 11 N. E. 383; People v. Roberts, 151 N. Y. 541, 45 N. E. 941. With the view, evidently, to check the litigation which was increasing under such claims, the sixty-fifth section of the general tax law was amended by the act above cited, so as to substantially provide that all the conveyances previously executed by the comptroller, which up to that time had been presumptive evidence only, should, six months after such act took effect, and after having been recorded for two years in the office of the clerk of the county wherein the lands were situated, be conclusive evidence "that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto," and the conveyances thereafter executed, or previously executed but thereafter recorded, should be conclusive evidence of the regularity of such proceedings and matters from and after the expiration of two years from the date of its record. The provisions of this act, which gave to the owner six months' time in which to attack the validity of the proceedings under which the conveyances theretofore recorded for two years were issued, and which limited all owners in subsequent cases to the two years after the recording of such conveyances in which to attack its validity, were evidently incomplete and unjust, if there were no provision by which the owner might bring before some judicial tribunal the question of its validity in those cases where the state itself was the purchaser or the grantee. It was household law that, unless specially authorized by statute, no action could be maintained against the state in its own courts to test the title which it claimed under such a conveyance; and the courts had determined that the owner had no standing before the comptroller to procure a vacation by him of the sale and conveyance. Hence the owner was without remedy, unless perchance he could provoke the state to test the issue in some proceeding instituted by it against himself. Such was the situation under which the section first above quoted was enacted. It was passed upon the same day that the statute last above cited was passed, and takes effect at the same time. And it is also an amendment of the general tax law of 1855, by adding section 93 thereto. Clearly, it seems to me that the purpose of such section 93 was to supplement and give fair effect to the amendment of section 65, and to make the way clear for the owner to assert and enforce his rights as against the title which the state claimed in any conveyance issued to it by the comptroller. The easiest and usual way to procure an adjudication as to the ownership of lands was to bring an action of ejectment against the party who was in possession claiming the same. As to those lands which the state claimed under a conveyance made upon a sale for taxes, it was deemed just to at once take possession, and permit an action of ejectment to be brought to test such claim. Particularly was it just after the amendment of section 65, above cited. Hence the passage of section 93, the plain intent and meaning of which, it seems to me, was to assume, on behalf of the state, the actual possession of all such lands,

in the name of the comptroller, and to permit an action to be maintained to dispossess him of such possession, and thus test the title of the state to the same. If such was not the purpose and meaning of the section, I cannot see that it has any force or effect whatever. In People v. Roberts, 151 N. Y. 540–542, 45 N. E. 941, this plaintiff's grantors had made application to vacate the tax sale of 1885, of the very lands in question here, on the ground of irregularity in the tax, and claimed that, because the state had become the purchaser and grantee, such a proceeding might be maintained. But the court of appeals, affirming the judgment of this court (8 App. Div. 219, 40 N. Y. Supp. 457) held that the same rule was applicable when the state was the grantee as had long been applied when the conveyance was to third parties; that the remedy of the owner was not before the comptroller, but by action in the courts. It was said in that case (page 543, 151 N. Y., and page 942, 45 N. E.):

"If the sale is invalid, his title is not affected, and he may keep and defend his possession, or, if put out of possession, he may regain it by action of ejectment."

In that case the court was speaking of the very lands in question here, and of a sale thereof under which the defendant in this action seeks to justify his possession and sustain the title of the state. It seems very clear that the advertisement by the comptroller, under the above cited ninety-third section, operated to put the actual possession of the lands in the comptroller, and thus not only to deprive the owners of it, but also to prevent their ever actually acquiring it. And I know of no authority under which an action could be brought to regain it, other than the section in question. It would seem that such decision is substantially an authority to that effect.

It is claimed that the forest commission has the possession of all lands within the limits of the forest preserve, and that, if it could be maintained at all, this action should be brought against it. By chapter 283 of the Laws of 1885, the "care, custody, control and superintendence of the forest preserve" is given to that commission; but that act was passed and took effect May 15, 1885, and section 93, above cited, was passed and took effect June 9, 1885. If the two are so inconsistent that both cannot exist, the earlier must yield to the later act. But, in my opinion, they do not conflict. The forest preserve consists of all the lands within certain specified limits which are owned by the state, and of this large tract of land the commission is given the care, custody, and control. It is the duty of that department to take all those proceedings and do all those acts which are necessary to fully protect the same, and secure to the state the benefit to be derived from its possession. But such care, custody, and control need not necessarily interfere with the legal possession being held by the comptroller for the benefit of the state. So long as there is conflict and doubt over the title of any particular parcel, it is not certain that it is owned by the state, and therefore not certain that it is in the forest preserve. Therefore it may well be that the actual possession which the state was willing to assume, to the end that the alleged owner might bring ejectment to establish his title, should be placed in the comptroller. The question of actual possession is of

importance only to those who, claiming to be owners, wish to attack
the title of the state; and as to such lands the possession is given to
the comptroller, without at all conflicting with the commission's care
and custody of the forest preserve.    In Timber Co. v. Roberts, 68
Fed. 521, the circuit court of the United States has held that under
this section an action of ejectment may be maintained against the
comptroller; and, in my judgment, such construction of the statute
is correct.

It remains to be determined whether, for any other reason, the com-
plaint should have been dismissed.    The plaintiff has the title to the
585⅔ acres in question, unless the state has acquired it under the
proceedings of 1881 or 1885 to sell the lands for taxes.    In Novem-
ber, 1881, such lands were offered for sale by the comptroller in pay-
ment of delinquent taxes assessed against them for several years
prior thereto.    At such sale a certain specific 100 acres thereof were
bid off by one Talmadge for the full amount of taxes assessed against
the tract, and a certificate to that effect was issued to him.    On
April 25, 1883, a notice was published by the comptroller to the effect
that such 100 acres (describing them) were sold for arrears of taxes
in November, 1881, and were still unredeemed, and that the sum of
$112.92 must be paid by the 23d day of November, 1883, in order to
redeem the same; otherwise, a conveyance would be made to the pur-
chaser thereof.    In that notice the whole 585⅔ acres were given as the
tract against which the taxes were assessed, and the 100 acres as the
part thereof sold.    Subsequently, on October 31, 1884, Talmadge hav-
ing made default in the payment of his bid, and no redemption having
been made by the owner, the comptroller canceled the certificate to
Talmadge, and conveyed the whole 585⅔ acres to the state.    It is
claimed by the plaintiff that such conveyance was utterly unauthor-
ized and void.    It would seem that, up to the sale and issuing of a
certificate to Talmadge, the proceedings were undoubtedly regular.
By section 47 of chapter 427, Laws 1855, the comptroller is given au-
thority to cancel such a certificate at any time after three months,
in case the purchaser shall not have paid the amount of his bid, or
the same has not been collected from him.    In the event that he does
so cancel it, the comptroller may either sell such certificate to any
one who will pay the amount due upon it, or, if such sale cannot be
made, he may transfer the same to the people of the state.    Such was
the provision of section 48 of the said chapter.    By section 49 of such
act it was provided that the certificate issued to the new purchaser
conferred upon him the same rights as he would have acquired had he
been the successful bidder at the sale.    The statute also gave to the
owner the right to redeem from the sale at any time within two years
thereafter; and by section 61 it was provided that at least six months
before the expiration of such two years the comptroller should publish
in each county a notice of the lands therein sold for taxes and still
unredeemed, and the amount necessary to redeem the same, and
stating that, unless redeemed by a specified day, such lands will be
conveyed to the purchaser.    Under these sections it is manifest that,
in cases where the purchaser had made default and the certificate
had been transferred to the state, the statements required to be made

in the notice of redemption were nevertheless sufficient to apprise the owner of the actual situation. The amount to be paid was the same as if the original purchaser still held the certificate, and the lands sold and to be redeemed were the same; the state having taken under the certificate no more than the purchaser took. But by chapter 152, Laws 1878, as amended by section 3 of chapter 402, Laws 1881, section 48, above cited, was amended so as to provide that, in all cases where the people of the state become the purchaser by such transfer, the whole quantity of land liable to sale for the purchase money mentioned in such certificate shall be covered by such purchase, the same as if no person had offered to bid at the sale. Here was a radical change in the rights given to the state, upon the acquisition of such a certificate; and it is manifest that, if such change is not made until after the notice of redemption is given, its contents, instead of informing the owner, must mislead and deceive him. Thus, in the case at bar, when the notice of redemption was given Talmadge still held the certificate, and stood in the position of purchaser. Although in default as to his payment, his certificate had not been canceled, nor had the state acquired it. The statement in the notice of redemption was correct. One hundred acres only had been sold, and those acres only were "remaining unredeemed." The owner, being so informed, chose to allow those acres to go unredeemed and thus pay the tax upon the rest. But after such notice, and after such action on the owner's part, the certificate upon which Talmadge had long been delinquent is canceled by the comptroller, and the whole $585\frac{2}{3}$ acres are conveyed to the state. Not only has the owner had no notice that his $585\frac{2}{3}$ acres had been sold, and must be redeemed, but, in effect, he has been told that only 100 acres thereof had been sold, and that the rest need not be redeemed. And, as a matter of fact, no more than 100 acres ever have been sold at a sale where competitive bidding was allowed. Since the amendment of section 48, the claim of the state is that, having taken an assignment of the certificate, it has under that section become the purchaser of the whole $585\frac{2}{3}$ acres, the same as if it had bid off the same for want of other bidders at the time they were exposed for sale. But, if such is the situation, then there has been an utter failure to give the notice of redemption required by the statute. Nor is it possible to give such a notice in any such case, unless the purchaser's certificate is canceled and the transfer made to the state before the expiration of 18 months, within which time the notice of redemption must be given. In other words, since the amendment it becomes necessary to vacate the purchaser's certificate and transfer the purchase to the state before the notice of redemption is given; and, if such change is made after the notice, it is, in effect, as if no notice of redemption whatever had been given. Hence the proceeding and the conveyance under it gave no title to the state. Bunner v. Eastman, 50 Barb. 640.

It is claimed, however, that such errors are cured by the statute of 1885 (chapter 448), above cited. It has been held that such statute does not cure jurisdictional defects; and in Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, and 15 N. E. 401, what are to be deemed jurisdic-

tional, in the sense so used, are clearly pointed out. See, also, Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. 604. I am of the opinion that the appropriation of the whole tract of 585⅔ acres by the state, without any sale of the same, and after a notice to the owner that only 100 acres thereof had been sold and were to be redeemed, was a jurisdictional defect, within the above decisions. As to 485⅔ acres of his lands, the owner has never had any notice that the state had or would sell or appropriate the same in satisfaction of the tax against them. I conclude, with reference to the tax sale of 1881, that the state has acquired no title to the lands in controversy.

As to the sale of 1885, the same lands were again advertised for sale on account of delinquent taxes for 1877 to 1882, inclusive, and bid off by the state, and a conveyance executed to it. Such sale was subsequently canceled by the comptroller on the application of Millard and others, as owners; but such cancellation was utterly nugatory, and did not at all affect the title of the state. People v. Roberts, above cited. But, on such sale, we must assume that no competition whatever was allowed at the sale. By section 5 of chapter 402 of the Laws of 1881 it is provided that the comptroller shall bid off all lands then belonging to the state, and shall reject any and all bids which may be made for any or all of said lands. These lands were then held by the state under the conveyance of October, 1884, and therefore the actual proceeding in 1885 was but an appropriation of the lands, without sale, to satisfy the taxes against them. It was but an assertion of ownership under the deed of October, 1884, and could not in itself add anything to the title which that conveyance gave. Cromwell v. MacLean, 123 N. Y. 476–489, 25 N. E. 932; Turner v. Boyce, 11 Misc. Rep. 502, 512, 33 N. Y. Supp. 433.

In order to render the conveyances to the plaintiff void for champerty, it must appear that at the time they were taken the lands were in the actual possession of the state, and that it was claiming under a title adverse to that of his grantors. Dawley v. Brown, 79 N. Y. 390. Confessedly, all these lands were wild and unoccupied,—not in the actual possession of any one, except so far as section 93 of the act of 1885, above cited, puts the actual possession in the comptroller. Concede that such possession was sufficient to render a conveyance champertous; yet the evidence does not disclose that any such possession had been acquired by the comptroller prior to the advertisement begun on December 22, 1894. Before that time he had no possession whatever, and any conveyance taken by the plaintiff prior to that date is not to be discredited on that ground. It appears from the record that plaintiff holds title to these lands through two sources,—one through the McCormick patent, issued by the state in 1798. Some of the conveyances to plaintiff, transferring to him undivided interests in this title, were made prior to the date of such advertisement, and some subsequently to it. Such as were made prior to it were not champertous. The other source of the plaintiff's title is through a deed from the comptroller to Turner and Marsh, executed December 21, 1891, and by them conveyed to the plaintiff; Turner conveying October 29, 1894, and Marsh conveying May 15, 1894. Both of such conveyances are prior to the comptroller's advertisement, and there-

fore, as to them, he was not in the actual possession when they were taken. For these reasons it cannot be said that plaintiff's complaint should have been dismissed because his deeds were void for champerty.

Nor do I think that it can be said such lands were at the time the subject of controversy by suit in any court, within the meaning of section 129 of the Penal Code. Those proceedings were before the comptroller, and, as matter of fact, were dismissed because Millard and Ostrander had no right whatever to institute them. They were not proceedings that could in any way affect the title which they assumed to convey to plaintiff. Nor can the conveyances from them, or from Turner and Marsh, be treated as a sale and purchase of a pretended title, in violation of section 130. Although no one had the actual possession, yet the title of Turner and Marsh, coming directly from the state, and from them to the plaintiff, the constructive possession which follows such title, in the absence of any adverse holding, is sufficient to relieve it from the condemnation of that statute. Wright v. Railroad Co., 92 Hun, 32, 36 N. Y. Supp. 901. Moreover, as I understand this record, the state on December 21, 1891, conveyed those lands to Turner and Marsh. The deed is not before us, but I do not understand that it assumed to then convey any less title than the state then had. It seems to have been introduced by the defendant to show title out of plaintiff, and thus defeat his action of ejectment. But the plaintiff replies by showing a conveyance of that title from Turner and Marsh to himself. Thus, under this title, he seems to have established his right, as against the state, to the lands in question, even though the state did acquire a good title to the same under the sales of 1881 and 1885. Whatever title the state acquired through those sales would seem to have passed by its conveyance to Turner and Marsh in 1891. Thus, if this action could be maintained at all, there does not seem, on this record, to be any reason why the title of the plaintiff is not good, as against the state, and therefore the complaint should not have been dismissed.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur, except MERWIN, J., dissenting.