SARANAC LAND AND TIMBER COMPANY, Respondent, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York, Appellant.

Tax — sale of non-resident forest lands for unpaid taxes — state obtains no title when any part of the assessment is invalid — title not perfected by subsequent tax sales — ejectment to recover lands sold by state — Statute of Limitations — possession and powers of comptroller — powers of forest commission.

No action can be maintained against the government, state or Federal, except by its consent, express and not implied, and to be found in some special statute; and where in reality the suit against a state officer is a suit against the state itself, it cannot be maintained, although, if the suit against the officer or the agent of a state is based upon his illegal acts, or to recover property illegally possessed by him, the rule is otherwise.

The comptroller of the state has no power to set aside a sale for taxes upon the application of the owner to cancel the sale for illegality, since the statute authorizing such an application was not intended for his benefit but for the benefit of the purchaser, who had paid his money to the state upon the faith of a title supposed to be valid but which turned out to be defective or void.

Chapter 283 of the Laws of 1885, which provides that the forest commission shall have the care, custody, control and superintendence of the forest preserve, did not authorize that commission to represent the state in actions brought to deprive it of the possession of and the title to lands, and its powers were not so wide as to imply the right to defend an action of ejectment.

The possession by the state, through the forest commission, of wild vacant forest lands, is not such a possession as to render champertous and void a grant of lands by one claiming title thereto as against the state.

Previous to the enactment of section 4 of chapter 453 of the Laws of 1885 the state did not give its consent to be sued by a person claiming to be the owner of such lands; and until the comptroller acted under its provisions then contained, as amended in section 13 of chapter 711 of the Laws of 1893, by advertising the lands as therein provided, he did not become vested with the actual possession of the lands so as to authorize an action to be brought against him. Hence, the short limitation of six months under chapter 448 of the Laws of 1885 was not set running as to actions by the landowner to dispossess the state of its lands acquired through illegal tax sales until the advertisement by the comptroller, and an action brought by the owner within six months thereafter can be maintained.

Section 4 of chapter 453 of the Laws of 1885 (section 133 of Tax Law of 1896, now embodied in section 133 of chapter 60, Consolidated Statutes) is complementary to chapter 448 of the Laws of 1885, passed on the same day. The effect of chapter 453 in the light of the previous act is that, as to wild forest lands, title to which was held by the state through tax sales, an actual possession might be vested in the comptroller which would permit an action to be maintained against him to try title.

Where wild forest lands, owned by a non-resident, were sold by the comptroller for unpaid state, county, town, highway and school taxes, imposed for several years, blended together in one sum, and were bid in by the state for an aggregate amount, and it appears that one of the assessments for the school taxes included a part of such lands which lay beyond the taxable limits of the school district and that the owner of the lands received no notice of the assessment, the sale was invalid and no title passed thereby to the state, notwithstanding the illegal school tax was but a small part of the unpaid taxes involved in the sale.

Subsequent sales of such lands for the non-payment of taxes of other and subsequent years, at which sales no bids were received but the lands were declared to be state property and struck off to the state pursuant to the statute (L. 1881, ch. 402, § 5), did not operate to vest any title in the state.

*Saranac Land & Timber Co.* v. *Roberts*, 125 App. Div. 333, affirmed.

(Argued April 7, 1909; decided May 4, 1909 )

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 13, 1908, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The action is in ejectment, to recover possession of the west half of the northeast quarter of township 24, great

tract I, Macomb's purchase, in Franklin county. The subject of the action is a large tract of wild forest land, situate in that part of the Adirondack region. The plaintiff claims to be the owner of the fee of the land, through mesne conveyances from its original owners, and that the defendant, as comptroller of the state of New York, is in actual possession thereof and unlawfully withholds the same. The defendant claims that the state had become the owner of the fee of the land in controversy, by virtue of tax sales in the years 1877, 1881 and 1885, and was lawfully in the actual possession thereof. The answer, besides setting up the title of the People to the land, defends against the action upon the ground that it is barred by the Statute of Limitations, as contained in chapters 448 of the Laws of 1885, 217 of the Laws of 1891 and 711 of the Laws of 1893, and upon the further ground that the deeds to the plaintiff's predecessors in title and to it were champertous. The plaintiff recovered a judgment in its favor, upon a trial before a referee; who formulated his decision in findings of facts and conclusions of law. The Appellate Division in the third department affirmed the judgment so recovered, one of the justices dissenting.

*Edward R. O'Malley*, Attorney-General (*Louis Marshall* and *John H. Burke* of counsel), for appellant. The plaintiff is barred from maintaining this action by the limitation created by chapter 448 of the Laws of 1885. (*People* v. *Turner*, 117 N. Y. 227; *People* v. *Turner*, 145 N. Y. 451; *Turner* v. *New York*, 168 U. S. 90; *Meigs* v. *Roberts*, 162 N. Y. 371; *S. L. & T. Co.* v. *Comptroller*, 177 U. S. 318.) The doctrine of *stare decisis* is applicable here. (Cooley on Const. Lim. [7th ed.] 83; 1 Kent's Comm. [13th ed.] 475, 567; *Chase* v. *Chase*, 95 N. Y. 379; *Palmer* v. *Lawrence*, 5 N. Y. 389; *Lahr* v. *M. E. Ry. Co.*, 104 N. Y. 268; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *People ex rel. Fleischmann* v. *Caldwell*, 168 N. Y. 671; *Dorr* v. *U. S.*, 195 U. S. 138.) A remedy existed of which the plaintiff or its predecessors in

title might have availed during the six months succeeding the
enactment of chapter 448 of the Laws of 1885, for the pur-
pose of trying the title to the land in controversy here.
(*United States* v. *U. P. R. R. Co.*, 91 U. S. 72; *Platt* v. *U.
P. R. R. Co.*, 99 U. S. 60; *Holy Trinity Church* v. *United
States*, 143 U. S. 463; *The Delaware*, 161 U. S. 472; *Shaw*
v. *Kellogg*, 170 U. S. 331; *People ex rel. Turner* v. *Kelsey*,
180 N. Y. 24; *People ex rel. Forest Comm.* v. *Campbell*, 152
N. Y. 51; *Turner* v. *New York*, 168 U. S. 90; *S. L. & T.
Co.* v. *New York*, 177 U. S. 318.)  Chapter 448 of the Laws
of 1885 is valid and operative as a curative act.  (Cooley's
Const. Lim. [7th ed.] 531; Blackwell on Tax Titles, § 452;
Judson on Taxation, § 338; *Williams* v. *Board of Suprs.*,
122 U. S. 154; *Castillo* v. *McConnico*, 168 U. S. 674; *Mat-
tingly* v. *District of Columbia*, 97 U. S. 687; *Terrel* v. *Wheeler*,
123 N. Y. 76; *Ostrander* v. *Darling*, 127 N. Y. 79; *Gilmore* v.
*City of Utica*, 131 N. Y. 26; *Van Deventer* v. *Long Island
City*, 139 N. Y. 133; *People* v. *Turner*, 145 N. Y. 457; *Smith*
v. *City of Buffalo*, 159 N. Y. 427; *Conde* v. *City of Schenec-
tady*, 164 N. Y. 258.)  The lands in suit having been in the
actual possession of the People of the state of New York,
through the forest commission under a claim of title adverse to
the plaintiff's grantors, at the time of the delivery of the deeds
to Smith and Hall, and from them to the plaintiff, such deeds
were champertous and void.  (*People ex rel. Forest Comm.* v.
*Campbell*, 152 N. Y. 58; *Crary* v. *Goodman*, 22 N. Y. 176;
*Sands* v. *Hughes*, 53 N. Y. 287; *A. B. & N. Co.* v. *N. Y. C.
& H. R. R. Co.*, 129 N. Y. 263; *Dever* v. *Hagerty*, 169 N. Y.
481; *Moss* v. *Scott*, 2 Dana [Ky.], 271; *Pearce* v. *Moore*, 114
N. Y. 256; *McAuliff* v. *Hughes*, 128 App. Div. 355; *Green*
v. *Horn*, 128 App. Div. 686.)  The school district tax of 1870
was properly levied, and the tax list did not include lands out-
side the district.  (Cooley on Taxation [3d ed.], 922; Black-
well on Tax Titles, § 1116; *Missouri, K. & T. R. Co.* v.
*Shannon*, 10 L. R. A. 681; *Ward* v. *Barrows*, 2 Ohio St.
241; *Winder* v. *Starling*, 7 Ohio Rep. Cond. 499; *Hartwell*
v. *Roots*, 19 Johns. 344; *Bank of U. S.* v. *Dandridge*, 12

Wheat. 70; *Easton* v. *Calendar*, 11 Wend. 91, 95; *Ex parte Bennett*, 3 Den. 175; *Whitbeck* v. *Billings*, 1 Hun, 494; *People ex rel. Yale* v. *Eckler*, 19 Hun, 609; *Coleman* v. *Shattuck*, 2 Hun, 497; 62 N. Y. 348.) The state acquired title to the lands in controversy under the tax sales of 1881 and 1885, which are not subject to the objections upon which the decision of the Appellate Division is based. (Cooley on Taxation [3d ed.], 858; *King* v. *Mullins*, 171 U. S. 404; *Hodgdon* v. *Wight*, 36 Me. 326; *Adams* v. *Larrabee*, 46 Me. 516; *Wild's Lessee* v. *Serpell*, 10 Grat. 405; *Hale* v. *Branscum*, 10 Grat. 418; *Usher* v. *Pride*, 15 Grat. 190; *State* v. *Cheney*, 45 W. Va. 478; *State* v. *Swann*, 46 W. Va. 128; *Braxton* v. *Rich*, 47 Fed. Rep. 178; *Southworth* v. *Edmands*, 152 Mass. 203.)

*Frank E. Smith* and *Thomas F. Conway* for respondents. An action of ejectment can be maintained against the comptroller to try the title of the state to the lands in question. (*Sanders* v. *Saxton*, 182 N. Y. 477; *People* v. *Dennison*, 84 N. Y. 272; *Locke* v. *State*, 140 N. Y. 480; *United States* v. *Lee*, 106 U. S. 196; *T. & G. R. R. Co.* v. *Comm.*, 127 Mass. 43; *Cunningham* v. *M. & B. R. R. Co.*, 109 U. S. 446; *Hagood* v. *Southern*, 117 U. S. 52; *Matter of Ayres*, 123 U. S. 443; *Fitts* v. *McGhee*, 172 U. S. 516; *Kansas* v. *United States*, 204 U. S. 331.) The deeds to the plaintiff were not void for champerty. (*Dawley* v. *Brown*, 79 N. Y. 396; *Crary* v. *Goodman*, 22 N. Y. 170; *Marsh* v. *Ne-ha-sa-ne Park Assn.*, 18 Misc. Rep. 314; 25 App. Div. 34; *Pearce* v. *Moore*, 114 N. Y. 256; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 135 N. Y. 613.) The land in question is wild, vacant, forest land, which is not and never has been, in the actual possession of anybody. (*Miller* v. *L. I. R. R. Co.*, 71 N. Y. 380; *Arents* v. *L. I. R. R. Co.*, 156 N. Y. 1; *Mygatt* v. *Coe*, 147 N. Y. 456; *Churchill* v. *Onderdonk*, 59 N. Y. 134; *Thompson* v. *Burhans*, 61 N. Y. 52; 79 N. Y. 93; *Wheeler* v. *Spinola*, 54 N. Y. 377; *Miller* v. *L. I. R. R. Co.*, 71 N. Y. 380; *Mission of I. V.* v.

*Cronin,* 143 N. Y. 524; *People ex rel. Marsh* v. *Campbell,* 143 N. Y. 335.) The tax sales in question which were void when made have not, as between these parties, been cured or validated by legislation. (*Welstead* v. *Jennings,* 104 App. Div. 179; 185 N. Y. 588; *Wallace* v. *McEchron,* 176 N. Y. 424; *U. S.* v. *Jones,* 131 U. S. 1; *Meigs* v. *Roberts,* 162 N. Y. 371; *People ex rel. McGuinness* v. *Lewis,* 127 App. Div. 107; *People* v. *Turner,* 117 N. Y. 239; Blackwell on Tax Titles [4th ed.], 114 ; *City of New York* v. *McLean,* 170 N. Y. 374; *People* v. *Hagadorn,* 104 N. Y. 521.) The action is brought in time and must be considered as if the short limitation law did not exist. (*Meigs* v. *Roberts,* 162 N. Y. 371; *People* v. *Golding,* 55 Misc. Rep. 425; *Chandler* v. *Dix,* 194 U. S. 590.) Ejectment could not have been maintained against the forest commission. (*People ex rel. Forest Comm.* v. *Campbell,* 152 N. Y. 51; *People* v. *Albrecht,* 11 Abb. Pr. 97.) An action against an officer or agent of the state which would result in depriving it of its property, or compelling it to perform its contract, is, in effect, an action against the state itself and subject to the same rules. (*Sanders* v. *Saxton,* 182 N. Y. 477; *Cunningham* v. *M. & B. R. R.,* 109 U. S. 446 ; *Hagood* v. *Southern,* 117 U. S. 52 ; *Matter of Ayers,* 123 U. S. 443; *Christian* v. *A. & N. C. R. R.,* 133 U. S. 233 ; *Adams* v. *Bradley,* 5 Sawyer, 217; *Cope* v. *Hastings,* 183 Penn. St. 300; *Lowry* v. *Thompson,* 25 S. C. 416; *Mills Pub. Co.* v. *Larrabee,* 78 Iowa, 97; *State ex rel. Hart* v. *Burke,* 33 La. Ann. 498.) After the passage of section 13 of chapter 711 of the Laws of 1893 the lands were in the possession of the state comptroller, and ejectment was maintainable against him. (*Meigs* v. *Roberts,* 42 App. Div. 292; *Sanford* v. *Sanford,* 62 N. Y. 553; *Parmenter* v. *State,* 135 N. Y. 154; *Baxter* v. *Wisconsin,* 10 Wis. 454.) The rule of *stare decisis* has no application. (*Sparrow* v. *Kingman,* 1 N. Y. 242; *Leavitt* v. *Blatchford,* 17 N. Y. 521; *Pollock* v. *F. L. & T. Co.,* 157 U. S. 429.) The several tax sales, and each of them, under which the state claims to have acquired title to the land in

controversy were illegal and void when made. (*Marx* v. *Hanthorn*, 148 U. S. 172; *Sharp* v. *Spier*, 4 Hill, 76; *Thompson* v. *Burhans*, 61 N. Y. 52; *Clason* v. *Baldwin*, 152 N. Y. 204; *N. P. Assn.* v. *Lloyd*, 167 N. Y. 431.) The school tax of 1870 was illegal and void. (*Deshong* v. *City of New York*, 176· N. Y. 475; *Beckwith* v. *Whalen*, 65 N. Y. 322; *City of Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397; Cooley on Taxn. [2d ed.] 140–163; *Jewell* v. *Van Steenburgh*, 58 N. Y. 85.) A sale of land for the unpaid taxes of several years is void if the tax of any one year be illegal, notwithstanding other and legal taxes may have entered into the sale. (Cooley's Const. Lim. [6th ed.] 639; Black on Tax Titles [2d ed.], §§ 228, 230; *People* v. *Hagadorn*, 104 N. Y. 516; *Shattuck* v. *Bascom*, 105 N. Y. 39; *N. P. Assn.* v. *Lloyd*, 167 N. Y. 431.) There was no legal sale in 1881. No title could be acquired by the state by means of a sale at which no one was allowed to bid. (Blackwell on Tax Titles [5th ed.], §§ 487, 503; *Andrus* v. *Wheeler*, 18 Misc. Rep. 646; 22 App. Div. 596; *Meigs* v. *Roberts*, 42 App. Div. 290; 162 N. Y. 371.)

GRAY, J. The very careful consideration, which this case has received at the hands of the justices of the Appellate Division, would render further discussion in this court unnecessary, if certain questions, arising upon the construction of statutes of this state, did not make it advisable to give final expression to our views. The opinion of Mr. Justice COCHRANE, speaking for the majority of the court below, is most elaborate and clear, and a reference to its reasoning will be profitable. The land, which the plaintiff seeks to recover the possession of, lies in the Adirondack region. It is wild, vacant, and covered by forests, and consists of some 3,750 acres. It was included in a sale of lands, held by the comptroller of the state in 1877, for unpaid state, county, town, highway and school taxes, imposed for the years from 1866 to 1870. At this sale, the lands sold were bid in for the state. The referee has found that the sale

was illegal and void, because of defects going to the jurisdiction to assess some of the lands and to the regularity of the proceedings leading to their assessment. The affirmance of the judgment by the Appellate Division requires, only, for its conclusiveness here, that the evidence should support the referee's decision with respect to such defects. A careful review of this record leaves no doubt in my mind that there was illegality in the assessment of some of the lands of the non-residents and that there were errors in the assessment proceedings; some of which were sufficiently serious to vitiate the assessment. In the opinion of the Appellate Division, one defect, found by the referee to have invalidated the sale, is considered, at great length, upon the facts evidencing it and upon the argument made by the defendant with respect to the evidentiary strength of the facts and to their legal effect. The question was whether the trustees of school district No. 2, in the town of Harrietstown, (which town included in its territory the whole of the lands in dispute), in making an assessment, in the year 1870, had included in their list non-resident lands, lying beyond a circle drawn about the schoolhouse with a radius of three miles. About one-half of the west half of the N. E. quarter of the township in question, the premises in controversy, lay outside of such circle and, therefore, beyond the taxable limits of the school district. That these boundaries of the territorial jurisdiction of these school trustees had been enlarged was the contention of the defendant and the argument was rested upon a presumption that, pursuant to an amendment in the statutes, apparently, removing the limit upon the extent of taxable territory, which, prior thereto, was described as within a radius of three miles from the schoolhouse, the area of assessment had been increased. In fact, subsequently to the imposition of the tax in question, the boundaries were changed by formal action of the authorities; but the records, produced by the town clerk, showed no order changing them theretofore. In the absence of such a record, or of competent proof *aliunde*, establishing the making of such a change, it will not do to indulge in presumptions that

such a change had been ordered, to make available the permissive terms of the amending statute.  The opinion below points out that, not only, was land included in the comptroller's sale, upon which a school tax had been laid without jurisdiction in the taxing authorities, but that the owner thereof had not received the notice, which, under the provisions of the statute, (See the act to revise and consolidate the general acts relating to public instruction, chap. 555, Laws of 1864, secs. 66, 67, 68, 74, as amended by chap. 647, Laws of 1865), he was entitled to upon fixing a valuation.  Without doing more than to refer to the opinion, for a fuller understanding upon this head of the discussion, it suffices to say that the defects, found by the referee to have existed in the jurisdiction to tax and in the assessment proceedings, were established by the evidence.  If made out, it was no objection to their effect upon the legality of the sale in 1877, that the tax affected was but a small part of the entire amount of the unpaid taxes involved in the sale.  As it is said in the opinion, they " were blended together in one sum and the property was sold and bid in by the Comptroller for an aggregate amount, without reference to the various items constituting the same."  This court has held that " when the State proceeds at one time to sell land for unpaid taxes levied during a series of years, some of which are valid and others are invalid, the title of the owner against whom the sale is made is not thereby divested. By mingling good and bad together the State cannot give a valid title to the property thus assessed."  (*Nehasane Park Association* v. *Lloyd,* 167 N. Y. 431, 437 ; *People* v. *Hagadorn,* 104 ib. 516 ; Cooley's Const. Lim. [6th ed.] 639.)  As the opinion below suggests, if the tax sale of 1877 had been made, solely, for the particular tax discussed, no title would have passed by a conveyance thereunder.

   If, upon the ground discussed, or upon any of the other grounds assigned by the referee, the tax sale of 1877 was invalid and, therefore, ineffectual to divest the owner's title to the lands sold, then the subsequent sales, as held by the comptroller in 1881 and 1885, for the non-payment of the

taxes of other years, could not operate to vest title in the state. The finding of the referee is that, upon these latter sales, the land was " in form put up for sale, no opportunity given for bids to be made thereat, but it was immediately declared to be State property and struck off by the auctioneer to the State." The evidence is to that effect. This procedure was under the provisions of section 5 of chapter 402 of the Laws of 1881, which required the comptroller to bid in all lands belonging to the state and to reject any and all other bids therefor. I think that if the state had not acquired title under the sale of 1877, then it acquired none by the subsequent sales; for the lands were not sold at public auction to the highest bidder. (Chap. 427, Laws of 1855, secs. 41, 44.) The putting of the lands up for sale was merely an empty form and what the state, in effect, did, in causing them to be struck off to it without competition, was to appropriate them to satisfy the unpaid taxes, under the claim of an ownership acquired at the prior sale. (See *Meigs* v. *Roberts*, 42 App. Div. 290, 298.)

In this situation of affairs, with the state holding deeds from the comptroller conveying, with others, the land in controversy, the legislature passed certain acts in the year 1885, which are important for our consideration; for they evidenced a new policy of the state with respect to the Adirondack region and an intent to make its title complete to all lands lying therein, which it held deeds for, or should acquire. It is the claim of the defendant that the bringing of this action was barred by the provisions of one of those acts, for having been commenced too late, and this presents the principal question on this appeal. By the year 1885, the state possessed, or claimed title to, some 750,000 acres of unimproved, or forest, lands in the Adirondack counties, and the legislature, moved thereto by the report of a commission appointed " to investigate and report a system of forest preservation ", decided to create a " forest preserve ", under the control of a forest commission. Chapter 283 of the Laws of 1885 was enacted to that end and its provisions will be referred to,

later, more fully. To supplement this legislation, it was essential that objections to the state's title, when derived through sales for non-payment of taxes, based upon jurisdictional defects, or irregularities, in the proceedings of the taxing authorities, or in the assessment proceedings, should be set at rest and the defects in title cured. For such purpose, chapter 448 of the Laws of 1885 was passed. It was entitled "An act to amend chapter 427 of the Laws of 1855, entitled 'an act in relation to the collection of taxes on lands of non-residents, and to provide for the sale of such lands for unpaid taxes.'" Its provisions need not be recited at length. So far as now material, it provides that "all such conveyances that have been heretofore executed by the comptroller * * * after having been recorded for two years in the office of the clerk of the county * * * shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto, * * * were regular * * * . But all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, as now provided by law, on a direct application to the comptroller or an action brought before a competent court therefor, by reason of the legal payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid." The second section of the act makes its provisions applicable only to the counties included in the forest preserve and prescribes a period of six months, within which any action may be begun, or proceeding taken, or application made, "for the purpose of vacating any tax sale or any conveyance or certificate of sale made thereunder." It is this period of limitation, which the appellant insists to have been applicable to the case of the plaintiff, or of its predecessors in title; for this action was not commenced until in June, 1895. On the same day that this last act was passed, the legislature, also, passed chapter 453 of the Laws of that year; entitled "An act further to amend chapter 427 of the Laws of 1855, entitled 'an act etc.'" The only portion of this chapter, material to be referred to, is con-

tained in section 4 and it reads as follows : " From and after the advertisement, once a week for three successive weeks, of a list of wild, vacant or forest lands, to which the state holds title from a tax sale or otherwise, in one or more newspapers to be selected by the comptroller, published in the county in which such lands may be located, all of such wild, vacant or forest lands shall be deemed, and are hereby declared to be, in the actual possession of the comptroller of this state ; and such possession shall be deemed to continue until he has been dispossessed by the judgment of a competent tribunal." This section became section 13 of chapter 711 of the Laws of 1893, and is now section 133 of the Tax Law. (L. 1896, ch. 908.) The significance of this enactment is to be traced in its language and in its connection with the prior enactment upon the same day. Considering it in the light of the previous act, it is complementary to it. It meant that, as to the wild forest lands, title to which was held by the state through tax sales, an actual possession might be vested in the comptroller of the state, which would permit of the maintenance of an action to try the title. It meant that the state would then assent to such an action being brought against that officer in a competent tribunal. Whether the previous act, (Chap. 448), which was intended to operate as a Statute of Limitations upon existing rights, included, in that aspect, such an action as this may be considered as a very doubtful question. The taxes, for which the sale in 1877 was made, included, as it has been shown, taxes, which the local authorities had no legal right to assess. What, from its language, chapter 448 proposed was to impose a period of limitation of six months from its passage for a proceeding, or an action, " for the purpose of vacating any tax sale, or any conveyance or certificate of sale made thereunder " ; leaving, apparently, without limitation, the right to bring an action which is based upon "the legal payment of such taxes, or, (as here), by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid." Whatever the force of that argument, it is not necessary for us to take it up ; inasmuch as the effect of the

passage of chapter 453 was to relieve the situation in that respect, as well as in the respect that, thus far, the state had not given its consent to being sued. The title to the land was held by the state under the tax sale deeds and there was no statute, which authorized a suit to be maintained against it, or to oust it from the possession. The state's title continued thus, until December, 1894, when the comptroller acted under the provision of chapter 453, (above quoted), then contained in section 13, chapter 711 of the Laws of 1893, by advertising lists of lands, and, by virtue thereof, became vested with the actual possession of the land described in the advertised lists. This action was commenced within six months after the comptroller's advertisement. Until that time, no opportunity was afforded by law to the plaintiff, or to its predecessors in title, to attack the conveyances to the state under the tax sales, or to assert their rights in any tribunal against the state ; unless, as the appellant argues, it had been competent for the plaintiff, either, to apply, under chapter 448, to the comptroller for a cancellation of the tax sales and of the conveyances thereunder, or to bring an action in ejectment against the forest commission, which chapter 283 of the Laws of 1885 had created. The appellant contends that chapter 448, as a Statute of Limitations, applied to claims against the state and, therefore, the bar had fallen, when the comptroller advertised his possession. As to the first of these alternatives, the argument rests itself upon the two decisions of this court in the· cases of *People* v. *Turner*, (117 N. Y. 227 ; 145 ib. 451), as having decided that the remedy by way of an application to the comptroller was available. The first of the *Turner* cases was an action to recover penalties for cutting and conveying away trees upon lands within the forest preserve and the second of the cases was in replevin, to recover logs cut upon similar lands. The same person was defendant in each case and the title of the state was derived through the same tax sale of 1877. In both cases, defects in the proceedings for the assessment of the land were relied upon by the defendant as invalidating the title of the state and, in the first one, the

constitutionality of chapter 448 was brought in question. The act was then held to be constitutional and to be one of limitation; while, in both decisions, the defects complained of were held to be in the nature of irregularities and not to have been jurisdictional. As to such defects, it was decided, the landowner had his remedy by the opportunity to appear before the assessors, or by an appeal to the board of supervisors, to challenge the legality and fairness of the assessment of his lands, and to be heard upon his claim for the modification, or for the vacating, of the same. But, in the opinions, it was, further, said that, after the tax had been returned to the comptroller, the act gave to the taxpayer the right to appear before that officer and, upon proof being made of the illegality of the tax and of the sale thereupon, authorized that officer to cancel the same. It was supposed that this right had existed before the passage of the act, under chapter 427 of the Laws of 1855. It is upon these latter propositions that the appellant relies and they would tend to embarrass the discussion, if they had been essential to the final disposition of the cases. They were not; inasmuch as, so far as the taxpayer's opportunity and constitutional day in court were concerned, he was given them by law, before the local boards. What had been said in the opinions in the *Turner* cases, as to the remedy of an application to the comptroller, was withdrawn in *People ex rel. Millard* v. *Roberts*, (151 N. Y. 540). In that case, it was considered, and so held, that the act of 1885, (Chap. 448), in amending the original act of 1855, (Chap. 427), so far as the comptroller's authority to act upon applications to cancel tax sales for illegality was concerned, had not changed the rule of law as established by the decisions. It was said that there was no intention to disturb those decisions by anything that was decided in the *Turner* cases. The decisions referred to, (*People ex rel. Wright* v. *Chapin*, 104 N. Y. 369; *People ex rel. Hamilton Park Co.* v. *Wemple*, 139 ib. 240; *People ex rel. Witte* v. *Roberts*, 144 ib. 234), were defined as holding that "the comptroller has no power to set aside the sale upon the application of the owner, since the statute was not intended

for his benefit, but for the benefit of the purchaser who had paid his money to the state upon the faith of a title supposed to be valid, but which turned out to be defective, or void." The *Millard* case, from the opinion in which the language has been quoted, was that of an application by the owners of lands in Franklin county for a cancellation of the tax sale held in 1881, at which the state had become the purchaser, and they were held to have no standing to make the application. So far, therefore, as the decision in *Turner's* case lent support to the doctrine that the landowner might make his application to the comptroller for cancellation, that support was withdrawn, when the members of the court, though agreed before, came to the consideration of a case, where the point was directly presented and was fundamental. The subsequent determination in *Millard's* case did not, in fact, affect any rights, resting on the *Turner* decisions. It, simply, re-asserted the doctrine of the decisions, construing the act of 1855, in the respect discussed, upon the ground that the amendatory act of 1885 had not affected their authority, nor enlarged the relator's rights. A decision of the United States Supreme Court, in the case of *Saranac L. & T. Co.* v. *Comptroller of N. Y.* (177 U. S. 318), is urged as conclusive upon the question presented and it is said that the doctrine of *stare decisis* should be applicable. It was, indeed, observed, in the opinion in that case, that, if constitutional, the limitation of chapter 448 had attached before the action was commenced. That action was, also, in ejectment, to recover the possession of another tract of forest land in Franklin county, and the plaintiff was defeated in the Circuit Court. The Supreme Court, to which the case was brought up, affirmed the judgment. The questions, which were stated in the opinion to be presented by the assignments of error, were two. They were whether chapter 448 was a valid and constitutional law and whether the defects in the tax sales, (which were similar to those referred to in this case), were beyond the reach of that law, if valid, under the construction given to it by the New York court. The question of when the statute began to run, as to any action which

might be brought against the state, was not presented. It was assumed that the six months' limitation had barred such and the discussion proceeded upon the errors assigned; following and re-affirming, on the question of the constitutionality of chapter 448, the prior decision of the Federal Supreme Court in *Turner* v. *New York*, (168 U. S. 90). In each of these cases, the court, considering that there had been a difference of opinion in this court upon the question of whether the landowner's proper remedy was by direct application to the comptroller, or by action of ejectment against the comptroller, or the forest commissioners, refused to decide that question. In the later of the two cases, decided by the Federal court, the reason for the refusal was stated to be, that " the question presented was the constitutionality of the statute." As it has been shown, the landowner, complaining of the loss of his land through sales for taxes assessed without jurisdiction, was without remedy, where the state had become the purchaser, for want of a tribunal, where his complaint could be heard by the consent of the state. The doctrine of *stare decisis* is inapplicable. The *Millard* case had settled the law in this court and the precise question now presented was not involved in the decision by the Federal Supreme Court. That court did not undertake to determine whether the state had consented to be sued and it having been finally held in this court that an application to the comptroller was only available as a remedy to the purchaser at a tax sale, the question of the maintenance of an action by the owner against an officer, or representative, of the state, having for its object the recovery of the lands acquired by the state, in the absence of its express consent, was left undecided. Nor is the case of *People ex rel. Forest Commission* v. *Campbell*, (152 N. Y. 51), in point. It was there decided that, where the state was aggrieved by a proceeding, in which its title to property acquired by purchase at a tax sale was canceled, the forest commission, as the representative of the state, could sue out a writ of certiorari, in the name of the state, to review the determination of the comptroller. That decision did not imply

that the state might be sued, directly, or indirectly, in the absence of its express assent. The question was as to the powers of the agent of the state to bring an action in the name of the state, relating to the property in its custody and control.

The argument that, within the time limitation of the act of 1885, (Chap. 448), the plaintiff, or its predecessors in title, could have maintained an action of ejectment against the forest commission and, thus, have contested the validity of the state's title, is not tenable. It may be conceded that the state was in possession through the agency of its forest commission; but, nevertheless, an action of ejectment brought against the commission would be, in effect, an action against the state itself; judgment wherein would operate to deprive it of the property it had acquired by purchase. Again, the enactment of chapter 553, of the Laws of 1885, negatived the notion that the forest commission was in actual possession, as the representative of the state, or otherwise than as the execution of its powers and the performance of its duties required that it should have such. The Forest Commission Act, (Chap. 283, Laws of 1885), was entitled "An act to establish a forest commission, and to define its powers and duties, and for the preservation of forests." Section 7 provides that "all the lands now owned or which may hereafter be acquired by the State", within certain named counties, including Franklin county, "shall constitute and be known as the forest preserve." Section 8 provides that such lands shall forever be kept as wild forest lands and should not be sold, leased, or taken. Section 9 provides that "the forest commission shall have *the care, custody, control and superintendence* of the forest preserve"; with full powers and duties to protect, and to promote the growth of, the forests, to have charge of the public interests of the state, "with regard to forests and tree planting, and especially with reference to forest fires in every part of the State", and to "prescribe·rules and regulations  *  *  * affecting  *  *  *  the forest preserve." Section 11 authorizes the commissioners to bring actions in the name of the

People to prevent injury and trespass, to prosecute actions for trespass and "to defend any actions brought against the commission, or any of its members, or subordinates, arising out of their * * * official conduct with relation to the forest preserve." In the light of these provisions, it was said in *Turner's Case*, (145 N. Y. at p. 461), that "the constructive possession which the state had acquired, * * * was made an actual possession by the powers and duties devolved upon the forest commission as its representative." This language, read in connection with what immediately precedes it, had reference to the question of whether the People had taken "any steps towards actual possession, after the conveyance to them of the land." Undoubtedly, the state did take actual possession of the lands, which it claimed to own, through its commission for the specified and necessary purposes of control and supervision ; but it was not intended, in the opinion, to say that there was an actual possession by the commission, in the sense of an occupancy of the lands, and that fact, as to the premises in question, is negatived by the finding of the referee. But whatever the possession of the forest commission, there was no authority conferred by the act to represent the state in actions brought to deprive it of the possession of and the title to the lands. The powers of the commission, with respect to actions, brought against it and defended by it, were not so wide as to imply the right to defend an action of ejectment, brought to recover possession of the lands claimed to be owned by the plaintiff. If regarded as an occupant, an action against the commission to try the title to lands in the forest preserve, held by the state, would be, in effect, an action against the state, to which it had never consented, and its consent could not be deemed to have been given until the proceeding under chapter 453, of the Laws of 1885, or of the amendatory act of 1893, (Chap. 711, sec. 13), had been taken by its comptroller. That no action can be maintained against the government, state, or Federal, except by its consent, express and not implied, and to be found in some special statute, is elementary

law and it is settled upon authority that where, in reality, the
suit against a state officer is a suit against the state itself, it
cannot be maintained. If the suit against the officer, or the
agent, of a state is based upon his illegal acts, or to recover
property illegally possessed by him, the rule is otherwise.
(Upon these propositions, see *People* v. *Dennison,* 84 N. Y.
272, 281; *Sanders* v. *Saxton,* 182 ib. 477; *Louisiana* v.
*Jumel,* 107 U. S. 711; *Davis* v. *Gray,* 16 Wall. 203.)
Finally, if the forest commission had that independent posses-
sion of the lands in the forest preserve, under the provisions
of chapter 283, which would authorize the maintenance of
such an action as this against it and a judgment for the recov-
ery of the land in controversy from the state, then the pur-
pose of the enactment of section 4 of chapter 453 of the Laws
of 1885 would be difficult to understand. That provided for
the publication of an advertisement, once a week for three
weeks, by the comptroller of the state of " a list of wild,
vacant or forest lands, to which the state holds title from
a tax sale or otherwise "; from and after which all of
such lands were declared to be " in the actual posses-
sion of the comptroller of this state " and which pos-
session was " to continue until he has been dispossessed
by the judgment of a competent tribunal." This enact-
ment, evidently, contemplated the lands to be in the pos-
session of the state; although that possession was manifested
and exercised through the agency of the forest commis-
sion. It contemplated that no suit could be maintained to
dispossess the state of the vacant forest lands, to which it held
title through tax sales, and that there could be none such,
until, by force of the procedure provided for, an actual pos-
session was vested by law in the comptroller of the state.
The act was intended by the legislature, beyond any reason-
able doubt, to furnish a remedy to the landowner as against
the state. When it was made available, by action taken by
the comptroller, then would be set running the short limita-
tion law, enacted on the same day in the passage of chapter
448, as to actions to dispossess him, or, in effect, the state, of

21

the land. This gave the landowner his day in court to assert his claim of right against the state. Until that claim could be enforced by a suit against the state itself, or some representative of the state appointed to that end, in some authorized tribunal, the Statute of Limitations could not run. (See *Parmenter* v. *State of N. Y.*, 135 N. Y. 154, 163.) It was not only a just provision in chapter 453, through which a landowner might have his day in court to try the state's title; it was a wise measure looking to the removal of any doubt and conflict as to that title.

However complicated the question we have been considering, through the difficulty of harmonizing legislative acts and the decisions bearing upon it, and however imperfect its discussion in this opinion, it is clear that when, in the *Millard Case*, (*supra*), we determined to adhere to the doctrine that chapter 427 of the Laws of 1855 and the amending act of chapter 448 of the Laws of 1885 did not provide a remedy to the landowner of an application to the comptroller to vacate the tax sales and deeds thereunder, he was left without any remedy for the recovery of his lands from the state's possession, until, acting under the subsequent legislation, the comptroller was vested with the possession and an action to dispossess him was permitted. The precise question we now determine is that the short limitation law of chapter 448 was not set running, as to actions by the landowner to dispossess the state of its lands, acquired through the illegal tax sales in question, until the advertisement by the comptroller in 1894.

With respect to the argument that the deeds to the plaintiff's predecessors in title were champertous and void, from the lands being, at the time, in the actual possession of the People, through the forest commission, I think that it must fail for two reasons. In the first place, as to this defense, the answer pleads an "actual possession of the People of the State of New York, claiming under a title adverse," etc. The Champerty Act, (Sec. 147, title 2, chap. 1, Part II, 1 R. S. 739), reads that "every grant of lands shall be absolutely void, if, at

the time of the delivery thereof, such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor." This statute does not apply to the possession of the state; for the reason that it is not a "person" within its meaning. Section 5 of the Statutory Construction Law, (Laws of 1892, chap. 677), provides that "the term person includes a corporation and a joint stock association. When used to designate a party whose property may be the subject of any offense, the term person also includes the state, or any other state, government or country which may lawfully own property in this state." It is clear, therefore, that the state could only be included as a "person", when the statute relates to any of its property, which may be the subject of an offense; not, of course, the case with the statute under consideration. If the forest commission could be regarded as in the actual possession for the state of the lands granted, there would be the same difficulty in the applicability of the statute. It is no more "a person" than is the state, within its intendment. But, in the second place, how could the forest commission be regarded as a person claiming under an adverse title? The referee has found, as a fact, that the land was not in the actual possession of any person, except as to some temporary camp sites. That the state was in actual possession, so far as it was possible, may be conceded; but that there was that actual possession by the commission, as its representative, or agent, which the law demands, (See *Crary* v. *Goodman*, 22 N. Y. 170, 173, and *Dawley* v. *Brown*, 79 ib. 390, 396), was not the fact. There was no occupancy of the premises. They were wild, vacant, forest lands, control and supervision over which the Forest Preserve Act had conferred upon the commission. It was in possession, as an agency of the state, for the purpose of executing the policy of the state, that the lands acquired by it in the Adirondack region should constitute a forest preserve; that the forests should be protected and their increase promoted, and that injuries thereto, or trespasses thereon, should be prevented.

I think that no further discussion of the questions raised

upon this appeal is needed and that, for the reasons above given, as for others in the opinion of the Appellate Division, the judgment should be affirmed.

CULLEN, Ch. J., EDWARD T. BARTLETT, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment affirmed, with costs.